Carrol *et al.*, *vs.* Gillion.

GEORGE CARROL, *et al.*, plaintiffs in error, *vs.* JOAB J. GIL-LION, defendant in error.

1. Declarations of a tenant in possession made at the time of taking possession or while in actual occupancy to explain the character and extent of his possession, are admissible as parts of the *res gestæ*, but when they constitute a narrative or a statement of a past transaction, they are in admissible.
2. Getting rails, boards, shingles, basket wood, and timber for building houses, from a woodland or unenclosed lot, are not such acts of ownership as will constitute adverse possession.
3. Extending an enclosure on adjoining land over the line of another lot some ten or fifteen feet, and taking within such enclosure a strip of land of that width, and running half across the lot under a claim of title, is not that open, notorious and important adverse possession, as would ripen into a title?

Ejectment and motion for new trial, in Dougherty Superior Court, decided by Judge CLARK, at June Term, 1863.

For the facts of this case, see the opinion of the Court.

L. P. D. WARREN, for plaintiff in error.

P. J. STROZIER, for defendant in error.

*By the Court*—LYON, J., delivering the opinion.

This was an action of ejectment for the recovery of lot of land, No. 139, in the third district of Dougherty, by the heirs-at-law of John Guyton, deceased, who were shown to be his widow, Ann Guyton; his daughter, Tabitha Guyton, and two deceased sons, Charles Guyton, represented by George Carrol, as his administrator, and Thomas N. Guyton, represented by Elvira L. Guyton, as administratrix, and Francis Thomas, as administrator, on his estate. The plaintiff put in proof a grant from the State of Georgia to Matthew Favor; a deed from Matthew Favor to Richard J. Willis; deed from Richard J. Willis to Thomas Baber, and a deed from Thomas Baber to John Guyton, all recorded; letters of administration on the estate of Charles Guyton to George Carrol, and letters of administration on the estate of Thomas N. Guyton to Elvira L. Guyton, and Francis Thomas. The *locus* being admitted the plaintiff closed.

Defendant offered one WILLIAM S. JARVIS as witness, who testified that he knew the lot of land and had been acquainted with it for a long time; that Joab J. Gillion, the defendant, first went into possession of said land in April, 1845, and cleared and enclosed ten or fifteen feet over the west line of the land; that Gillion told him he bought it at Newton at that time, and that his possession began at that time, and that he claimed the whole lot of land from that time to the present; that he used the land for getting rails, wood and timber, for any purpose he wished, as men usually use their wood lands; that he (Gillion) enclosed the ten or fifteen feet for the express purpose as he said of taking possession of the lot of land, and that Gillion cultivated from that time to the present, and that he had every year gathered the crops off of

Carrol *et al.*, *vs.* Gillion.

said lands, and that the enclosure extended about half way down the land line.

*Cross-Examined*—Said that he had known the land since 1845, after Gillion said he had bought it at Newton, and that he took possession of it to claim it under said purchase; that he used it for cutting timber for rails, wood and other purposes; that it was not used to cut such timber off wild lands adjoining owner's plantation; that the witness was a mere boy, sixteen or eighteen years old, in April, 1845; he had seen the numbers first in 1845, and had seen them several times, and constantly since that time, and had seen the blazes on the lines; did not recollect what kind of trees the numbers and blazes were on; did not know whether they were on old or dead or live or green trees; but they (the numbers) looked old like they had been there a long time and had not been cut down, and did not know whether they were dead or green trees; had given his answers to interrogatories in this case; does not recollect that he swore in those answers that he had never seen the numbers on the land, and don't recollect either that he swore in his answers to these interrogatories that the first land enclosed in said lot by Gillion, was in 1853; that he helped Gillion to clear the first land he ever cleared on said land; that he is the nephew of Gillion; has been living in Terrell county for about three years, but was now in the act of moving to Dougherty county to settle on land of Gillion, near to the land in dispute; that in 1853, witness helped Gillion to clear or enclose about one hundred acres on the west side of said land; that said land was worth $20 per acre, and $2 per acre for rent, and it was worth about $10 per acre to clear the same; Charles W. Roby ran away from Baker county about 1845.

Defendant introduced and put in evidence a deed from Charles W. Roby, as Tax Collector of Baker, for said lot of land to Joab J. Gillion, he being the purchaser thereof at the sale of said lot, on the first Tuesday in April, 1845, before the court-house door at Newton, in Baker, for taxes that had been assessed by said Roby, as Tax Collector and Receiver for Baker county, on and against said lot of land for the years

1839, 1840, 1841, 1842, 1843 and 1844, for the aggregate amount of eight dollars and seventy-one cents, as for taxes in arrears and unpaid by said lot for said years. The land was knocked off in parcels to Gillion, at the aggregate sum of twenty-two dollars and fifty cents, and for this consideration the deed was made.

Defendant also put in evidence a notice published in the Georgia Courier, of which the following is a copy :

"GEORGIA, BAKER COUNTY.

*To all persons concerned :*

You will please take notice that I do hereby charge and assess taxes and double taxes on lot of land Number 139, in the 3d district of Baker county. The amount of taxes due are from the year 1838 to the year 1844. The owner will please take notice that I will issue an execution for the amount of taxes due thereon on the 1st day of October, and shall proceed to sell the same in terms of the law.

Given under my hand this, the 16th day of November, 1844.        (Signed)

CHARLES W. ROBY, T. R.

November 16, 1844."

Plaintiff, in rebuttal, put in answers of William S. Jarvis to interrogatories sued out by defendant. He knew lot of land 139, in third district of originally Early, now Dougherty, county, and has known it for the last fifteen years ; that J. J. Gillion is in possession of it, and went into possession of it, to the best of his recollection, some time in April, 1845. He used the timber of said land for building, for boards, shingles, for baskets, for various other uses, before he settled on said lot; he has since settled on said lot of land, and has enclosed some hundred or more acres of land, and has some fifty acres or more in cultivation ; he has all the time claimed it in any way he saw proper ever since he bought it at Newton ; said he had bought it when he came home, and said that his possession commenced at that time, which was in April, 1845, and that he has never been out of the possession since he bought the said land.

Carrol *et al.*, *vs.* Gillion.

*Answers to Cross-Interrogatories.*—In answer to the question, what he calls posssession, and how many and sizes of the houses, and amount of timber cut off said land, he answers : "to have and to hold, and to use in any way he chooses ; has built eight houses ; witness does not know the sizes of the houses, but large enough to live in, and were put up out of logs, and by hand." There was considerable cut off the land, and for the purposes already stated in the second interrogatory.

To the 2d cross-interrogatory he answers : "That there was some hundred or more acres enclosed on the west line of said lot, enclosure running north and south ; he is acquainted with the lines of said land, but never saw the numbers ; the first land was enclosed on said lot in 1853 ; that Gillion moved on said land in 1853 ; there was a house, and some two or three acres, well and orchard, on said land before Gillion bought it ; he moved on it some time in 1853." Executed 25th May, 1858.

Plaintiff also put in evidence the depositions of Charles W. Horn : " He had seen lot of land No. 139, in 3d district of Dougherty county, saw it first in the summer of 1852 ; Mr. Joab J. Gillion claimed to be in possession of it at the time, showed it to me, and said he had bought it at tax collector's sale some years previous ; judging from the course of the lines, as pointed out to me by Mr. Gillion, and the course and shape of the cleared land adjoining, my opinion was, and still is, there was little or no open land on the lot at that time.

*To the Cross-Interrogatories.*—" That Joab Gillion claimed to be in possession of the lot, said he had bought it some years previous to that time, and had held it in possession ever since, but the length of time not recollected ; said he thought his title a good one, or as good as anybody else's, and he should not give up the possession of the land unless compelled to do so ; does not recollect to have seen any acts of ownership having been exercised by Joab Gillion, or any one else, over the lot at that time, except as stated in my answers to the direct interrogatories ; the clearing on the land adjoining extended a little across the line.

Defendant re-introduced WILLIAM S. JARVIS, who swore: That if he testified in a set of interrogatories previously executed in this case, that the first clearing made on the land in dispute was in 1853, it had reference to the one hundred acres cleared, and not to the ten or fifteen feet inclosed by Gillion in 1845, and that he, witness, did help Gillion to clear the one hundred acres in 1853, and that he then saw the number on the corner tree, but saw no number on the line tress, but did see places on the line trees inside of Gillion's inclosure of 1845.

The jury returned a verdict for the defendant, and plaintiff moved for a new trial on the grounds:

1. That the Court erred in allowing the witness, William S. Jarvis, to testify that Joab J. Gillion told him that he bought the land at Newton, in April, 1845, and that his possession of the land began then, and also in allowing the sayings of said Gillion as testified to in the interrogatories of Jarvis and C. W. Horn.

2. Because the Court erred in admitting in evidence, before the jury, the deed from Charles W. Roby, Tax Collector, to Joab J. Gillion.

3. Because the Court erred in allowing to go in evidence the advertisement in the Courier.

4. Because the Court erred in charging the jury that the declarations of the defendant, while in possession, was evidence, and that if the jury believe that Gillion said that he had been in possession of the land since 1845, and that there was a clearing upon the lot, then it was adverse, and if continued for seven years, under a deed, then said possession will ripen into title.

5. Because the Court erred in charging the jury that the tax laws of the State have nothing to do with the matter.

6. Because the Court erred in refusing to give the following charge to the jury: "That to enable the defendant to defend his title and possession, under the Statute of Limitations, his color of title, and possession under it, must have been in good faith, and such possession as would have been discovered by any one going on the land, and a mere pretence

Carrol *et al.*, *vs.* Gillion.

at possession, or by fraud to make the statute commence, to the aid of a title not good, and not obtained in good faith, cannot avail the defendant," the Court refusing to give the latter part of said charge, beginning at the words, " and mere pretence at possession " to the end of the request.

7. Because the Court erred in refusing to give the following charge to the jury : " That to avail himself of the Statute of Limitations, the defendant must have purchased in good faith, and have taken possession in good faith under the purchase, to benefit himself, and not merely to patch up an illegal and fraudulent title by the Statute of Limitations," the Court having refused to give in charge the latter part of said request, beginning at the words " and not merely to patch up," and to the end of the request.

8. Because the verdict was contrary to evidence and law.

9. Because the verdict was contrary to evidence and the principles of justice and equity.

10. Because the verdict of the jury was contrary to the charge of the Court in this, to-wit, that the Court charged the jury, that to enable the defendant successfully to defend his possession and title, under the Statute of Limitations, his possession must have been so open, obvious and notorious, as that the owner, on going on the land, must have seen that the defendant was in possession claiming as owner.

On the hearing of the motion to make the rule absolute, the Court allowed the same, and ordered a new trial on the grounds :

1. That the jury found contrary to the charge of the Court upon the point that defendant's possession must be so open, obvious and notorious, as that the owner, on going on the land, must have seen that the defendant was in possession claiming as owner, as the evidence does not sufficiently demonstrate such a possession as to warrant a finding in favor of defendant.

2. That the finding was contrary to law in this, that the possession of a strip of land of from ten to fifteen feet within the enclosure, mainly on the adjoining lot, and running down for half the length of the lot of land, which possession was

sustained by conflicting testimony, is not such an open and notorious possession as will be protected by the Statute of Limitations.

3. That the Court erred in admitting in evidence the sayings of Joab J. Gillion, the defendant, to Charles W. Horn, as to the length of time he had held possession.

To this decision of the Court below the defendant excepted, and brings the question before this Court for review by bill of exceptions.

There being no doubt as to the plaintiff having the true paper title for the premises in dispute, they were entitled to recover, unless the defendant succeeded by proof in establishing such a statutory title in himself as to bar that recovery. Did he do that? and that is the real question made by this record.

Quite a number of grounds are made in the motion for the new trial, as to the admission of evidence, charges to the jury, and refusal to charge as requested. It is unnecessary to notice each one of them, for all may be reduced to the two following questions:

1. Were the declarations of defendant, as testified to by the witnesses, Jarvis and Horn, as to his, defendant's, purchase of the premises, that he was in possession, and had been for such a length of time, admissible as evidence?

2. Did the evidence make out a statutory title in the defendant for the land in controversy?

1st. As to the declarations of the defendant—all those declarations that were made at the time of taking possession, or while in the actual possession, explaining the nature of his possession, and his intent in such occupancy, are admissible as parts of the *res gestœ*, but such as constitute a narrative or statement of the past, such as that he had bought the land; that he had taken possession, and had held possession and used the land as his own for such a space of time, are not parts of the *res gestœ*, and were improperly admitted. Gr. Ev., sec. 108, 109, 110, and authorities there cited.

The admission of this evidence, although improper and illegal, was not regarded by this Court as sufficient of itself

to authorize a new trial, because notwithstanding the declarations went to the jury as evidence, that the defendant had gone into the possession of the land in 1845, and continued to use and occupy it as his own from that time to the present, yet the true character of that possession and use of the land by the defendant appeared from the other testimony so plainly that the jury could not have been mistaken as to it, or misled by such illegal testimony; and if that possession and use, under the deed, had been sufficient to have created a statutory title in the defendant so as to bar the plaintiff's right, a new trial could not have been allowed on account of the admission of the illegal testimony; then, does the evidence make out a statutory title in the defendant to the premises? It does not.

2d. The defendant bought the land in 1845, at tax collector's sale, and from that time down to the bringing of suit, used the land by getting from it rails, boards, shingles, basket wood and timber, for building houses, etc., as often and as much as he pleased. This kind of use is not such adverse possession as would ripen into a title, as has been fully settled by this Court in Watts vs. Griswold, 20 Ga., 732, and Long vs. Young, 28 Ga., 134.

3d. The only other circumstance relied upon by the defendant to make out his title is, that in 1845 he extended the enclosure from adjoining land, some ten or fifteen feet over the line on to this land, taking into his enclosure a strip of this lot of that width running along the west line nearly or quite half the length of the whole lot, and this strip of land so taken in he has continued to cultivate and occupy as his own from that time down to the trial. Was this possession sufficient to create such an adverse holding as to ripen into a title? We are clear that it is not. A possession to be adverse must be so open, notorious and important as to give notice to parties that a claim of right is intended thereby; that the right of the true owner is invaded intentionally and with a purpose to assert a claim of title adversely to his. When such a possession is taken and an owner *acquiesces* in the fact for seven years, his right is barred. Ang. on Lim., 413, 427, 428 ;

Royall vs. Lisle, 15 Ga., 543; Denham vs. Holeman, 26 Ga., 182.

One witness is positive that the strip of land enclosed was from ten to fifteen feet in width and half across the lot in length. The other witness, to whom the land, its lines and this enclosure was specially pointed out and shown by the defendant and for the purpose of convincing the witness of his (the defendant's) actual possession of the land, after a careful examination, says: "*Judging from the course of the lines of the lot as pointed out to me by Mr. Gillion and the course and shape of the cleared land adjoining, my opinion was and still is, there was little or no open land on the lot at that time.*" Under this evidence or that of the only other witness to the fact, that of Jarvis, as strongly as he puts it, that the field ran over the line of this lot taking within the enclosure a strip of some ten or fifteen feet of this land, and what person, even if he went on and traced out the lines and saw plainly that his land was invaded to this extent, could have believed that it was done as a deliberate act of ownership, and as a claim of title? Ordinarily the fact would never be discovered or noticed, but if seen, would be considered as an oversight—an act of carelessness or something of the sort, and not to an assertion of an adverse holding. A possession to ripen into a title must be of a more positive and indubitable a character than this.

As there was nothing, therefore, to justify the finding for the defendant, it was proper and necessary to award a new trial.

Let the judgment be affirmed.