## HILTON *v.* SINGLETARY.

1. On the trial of a complaint for land in which the plaintiff relied for recovery upon a sheriff's deed made in pursuance of a sale by virtue of a fi. fa. for State and county taxes, issued against such land under the act approved February 28, 1874, after due proof of the loss of the original execution, a record of the execution made at the time the sheriff's deed was recorded in the office of the clerk of the superior court of the county where the land lay was admissible in evidence in support of the deed, the parties consenting that such record might be used in lieu of an exemplified copy thereof.

2. When it appeared, however, that the land which was actually levied upon and sold by the sheriff, and by his deed conveyed to the purchaser, was lot number 219 in the 28th district of the county where the sale took place, and that the description of the lot as contained in the record of the fi. fa. was lot number 219 in the 26th district of the county, it was permissible for the plaintiff to show by competent evidence a clerical mistake made by the clerk in entering the fi. fa. on the record by writing the wrong number of the lot. It was therefore not error for the court to admit in evidence, over the objection of defendant's counsel, the sworn testimony of a witness swearing from personal knowledge, to the effect that a fi. fa. against the lot actually sold, to wit, lot number 219 in the 28th district, was issued by his predecessor in office and sent to the sheriff for the purpose of levying upon and selling the land in dispute, on the ground that an exemplified copy of such execution from the office of the comptroller-general was the highest evidence; it appearing that the original had never been returned to the office of the comptroller-general, and it not appearing that there was any copy thereof in his office or in his custody or control.

3. The fact that such an execution was issued by the comptroller-general in 1877, on account of the non-payment of taxes on the land for the year

1874, would not per se raise the presumption that the fi. fa. was illegally issued, nor was it necessary in such a case for the comptroller to recite in the execution who the owner of the land was, or that he was unknown and that the land had not been returned for taxes.

4. Such a title makes out a prima facie case in behalf of the plaintiff upon which he could recover the premises in dispute, where the defendant fails to show anything impeaching the validity of the sale, and also fails to show a better title in himself by prescription or otherwise.

5. The evidence in this case was not sufficient to authorize a finding that this sale was void on account of excessiveness of the levy.

6. Under the testimony in the case, the defendant failed to show such an adverse possession of the premises in dispute, under color of title, for seven years, as under the law would have given him a valid prescriptive title to the property. If, therefore, there was any error in any of the charges or rulings complained of on the subject of prescription, it was harmless to the plaintiff in error.

Argued May 10,—Decided June 9, 1899.

Complaint for land. Before W. C. Worrill, judge pro hac vice. Early superior court. October term, 1898.

*R. H. Powell & Son*, for plaintiff in error.
*R. H. Sheffield* and *W. D. Kiddoo, contra.*

LEWIS, J. L. W. Singletary brought his complaint for land in the superior court of Early county, against E. Hilton, for the purpose of recovering lot of land number 219 in the 28th district of that county. It appears from the record that the foundation of the chain of title upon which plaintiff relied for a recovery was a deed from the sheriff of Early county to the plaintiff's predecessor in title, dated May 28, 1878, being based upon a levy and a sale thereunder of the property in dispute, by virtue of a tax fi. fa. issued by the comptroller-general of the State in 1877 against that particular lot as wild land, the fi. fa. being for taxes due the State and county on said lot for the year 1874. The fi. fa. issued against no particular person, and the land was sold as the property of a party unknown. On the trial it appeared that the original fi. fa. had been lost, and that the fi. fa. recorded, presumably at the time the sheriff's deed was put on record, was against lot number 219 in the 26th district of Early county; but the copy of the entry of record stated a levy and sale of lot number 219 in the 28th district, conforming to the description in the deed itself. It was

in effect proposed to show, by interrogatories of the present comptroller-general, that at the time of entering these records, the fi. fa. actually issued by Goldsmith, his predecessor in office, and sent to the sheriff, was really against the lot mentioned in the 28th district; that the same number of lot in the 26th district did not appear on the record as in default, and that in point of fact no fi. fa. ever issued against that particular lot. This testimony was admitted over objection by defendant's counsel that the exemplification of the record of the fi. fa. in the comptroller-general's office was the highest evidence of the fact sought to be proved. It seems from the testimony of the comptroller-general that he was a clerk in the wild-land office at the time the original fi. fa. was issued by comptroller Goldsmith. The defendant relied upon a chain of title, but it did not appear that the original grantor in this chain ever had title to the premises. The defendant bought after the sheriff's sale, and relied upon a prescriptive title which he alleged accrued to him by virtue of seven years possession under color of title after his purchase and before the institution of this suit. There was a verdict for the plaintiff for the premises in dispute, and the defendant excepted to the judgment of the court overruling the various grounds of his motion for a new trial.

1, 2. One complaint in the motion for a new trial is, that the court erred in admitting in evidence the record of the fi. fa. in the clerk's office of Early superior court. It was agreed by counsel that the record might be used for all purposes for which an exemplified copy thereof would be admissible. It was claimed, however, that the record of the fi. fa. tendered was irrelevant and incompetent. Section 3625 of the Civil Code provides that the purchaser at a sheriff's sale may have the execution under which the property was sold recorded with his deed, together with all the entries on said execution, and in the event of the loss or destruction of the execution, a copy of such record shall be admitted in evidence. In this case, however, it appeared that the description of the lot in the recorded fi. fa. did not correspond to that in the sheriff's deed, nor to a proper description of the land actually sued for. Of

course, the record offered on its face did not support the sheriff's authority to sell, and, without more being offered, neither the deed nor the record of the fi. fa. would have been admissible; but the fi. fa. being lost, it was clearly competent to seek the next highest evidence of its contents. This would have been the record of the fi. fa. itself if it had been recorded with the deed; but it appeared from that record and the deed itself that a manifest error or mistake had been made, the description of the land in the deed, and also in the entry of levy on the fi. fa., not corresponding with the description as to one particular number or figure, which the clerk had recorded, and which, in the absence of any other proof, would be presumed to be the real contents of the execution. Under this state of facts, then, it was clearly admissible to show how the mistake occurred; and if it appeared that it was a mere clerical error made by the clerk in transcribing the fi. fa., such a mistake, of course, would not render the deed absolutely void. It was therefore competent for the plaintiff to show by the next highest evidence acceptable what was really the truth of the matter. For this purpose he offered the depositions of the comptroller-general, W. A. Wright, and thus sought the fountain source from which this execution issued. The former comptroller-general had gone out of office, and the present incumbent of that office had been, at the time of the issuance of the fi. fa., a clerk in the office, and charged, it seems, with personal attention to such matters. In his testimony he stated that when the fi. fa. was issued it was sent to the sheriff of Early county; that it had never been returned to the comptroller-general's office; that it issued against the particular lot and district named in the sheriff's deed; and that no fi. fa. ever issued against the other lot in the 26th district. He also added to his testimony the assertion that the statements made in answer to the interrogatories were based upon his personal knowledge, confirmed by the records of the office. The testimony was objected to, on the ground that the highest evidence of the facts testified to was the exemplifications of the records themselves in the comptroller-general's office. The material facts elicited by the testimony related to the contents of the

execution which was actually levied by the sheriff upon the land. We know of no law requiring the comptroller-general to keep an execution-docket for the purpose of entering thereon executions that may be issued against wild lands. It is true that when there has been an official record authorized by law for such documents in a public office, an exemplification of such record certified by the proper official will be the highest proof of their existence and contents, and oral testimony on the subject will not be admissible. But where the law requires no such record, and especially where the proof fails to show that such record has actually been made, an exemplification of what might possibly be a mere memorandum in the office will not be admissible. In point of fact, the comptroller-general of the State has in his office no docket or record containing copies of executions that have ever been issued against wild lands. This information is obtained directly from the comptroller-general himself, and from his office; and we only refer to it as matter in support of our conclusion on the law, that no such record was required, and the probability is that none existed. We think, therefore, that there was no error in admitting all this evidence, including the sheriff's deed, the record of the fi. fa., and the testimony of the comptroller-general on the subject, as evidence tending to show a legal sale of this property by the sheriff.

3. The position is further taken by counsel for plaintiff in error, that the tax execution being for non-payment of taxes on the land for the year 1874, and not having been actually issued until 1877, it should have been rejected. The fact that the execution was not issued promptly upon default in the payment of taxes could not have rendered the comptroller-general powerless to act on account of the delay, and his action after the lapse of three years would be no more presumption against the legality of the execution than would a like failure on the part of a clerk of the superior court in the case of an execution on a judgment. Nor is it necessary in such a case for the fi. fa. to recite upon its face that the land has been unreturned for taxes, or to give the name of any particular party as the owner of the land against whom the tax fi. fa. is proceeding. The

comptroller-general was evidently proceeding under the act of 1874, and one object of that act was to provide means for subjecting wild lands to taxation when the owner thereof would not return the same for taxes. No doubt in many, if not a large majority of cases, such fi. fas. issue against the property itself, without any knowledge on the part of the tax officer as to who is or even claims to be the owner thereof. The remedy provided was intended to meet just such a case; and unless the taxes are paid, the law contemplated a sale of the property under a fi. fa. to be issued by the comptroller-general, whether or not the owner is ever known or heard of. As to whether such an execution, in order to render the same either valid or admissible in evidence, should contain a recital of such facts as are necessary to give the comptroller-general power to issue the execution, has been decided in the negative by this court in the case of *Greer* v. *Fergerson,* 104 *Ga.* 552. In that case it appeared that the sheriff's sale in question was had in 1878 for default in taxes for the years 1874, 1875, and 1876. There was no recital in that fi. fa. that the lands had been unreturned or that the taxes had not been paid. This question was thoroughly discussed by Chief Justice Simmons in the opinion; and the decision of the court was based upon the idea that when an execution is issued by the comptroller-general similar to the one presented by this record, the presumption is that that officer has fully complied with the law before taking such a step.

4. It follows from the above, that when a plaintiff in a suit for the recovery of land shows a title thereto founded upon such a sheriff's sale occurring more than twelve months prior to the commencement of his suit, and that this sale was regularly had under a fi. fa. issued by the comptroller-general, this makes out a prima facie case in favor of the plaintiff. There is no necessity for him to go behind that sale. Such a title has its fountain source in the State itself, and, in the absence of anything impeaching the validity of the sale or any proof showing that the defendant has a better title, such a title is tantamount to a grant from the State, upon which the plaintiff can recover.

5. Counsel for plaintiff in error, however, contends that this record shows that the levy was excessive. We question very

much whether this doctrine of excessiveness can be applied to a case of this sort, where the fi. fa. issues in rem against specific property, namely, a certain wild-land lot, for taxes due thereon. The sheriff is ordered to seize the identical property levied upon and sold, and in the mandate to him there is no implied authority to seize a greater or less quantity than that specified in the fi. fa. It is in the nature of a proceeding in rem. But, even applying the rule to a sale of this character, considering the whole evidence together in regard to the value of the property involved in this case, we do not think there was sufficient testimony to authorize the jury to reach the conclusion that the levy was excessive. Even, then, if there was any error in the several rulings complained of, touching this particular subject-matter, we think it was harmless to the defendant.

6. Plaintiff in error further relies upon his prescriptive title, and complains of certain rulings and charges of the court on this branch of the case. But it appears from the evidence introduced in his own behalf, that soon after purchasing the land he entered upon the same for the purpose of boxing timber thereon for turpentine, and after he had about exhausted the resources of the land for turpentine he then commenced to cut the timber therefrom for certain purposes. A fair view of his testimony, taken in connection with all the other evidence on this subject, would clearly indicate that this possession was of a fleeting and transitory nature, and that there was not on his part such continuous, adverse, and notorious possession as is necessary to give one a prescriptive title to realty. It is a well-settled rule, which has been repeatedly recognized by this court, that an occasional cutting and appropriation of timber is not such a possession of land as will ripen into title by prescription as against the true owner. It is not such an act of ownership as will constitute adverse possession. *Carrol* v. *Gillion,* 33 *Ga.* 539; *Long* v. *Young,* 28 *Ga.* 130; *Rider* v. *Waters,* 70 *Ga.* 716; *Strong* v. *Powell,* 92 *Ga.* 591. If there was any error, therefore, in the various charges and rulings of the court complained of touching the claim of prescriptive title insisted upon in this case, it is not such, under the facts in the record, as would authorize this court to grant a new trial.

There are a variety of grounds in the motion for a new trial to which we have not called special attention, for the reason that, whatever view we may take of the alleged errors considered as abstract propositions of law, the above principles control the case and necessarily lead to an affirmance of the judgment.

*Judgment affirmed. All the Justices concurring.*