McNEAL *v.* CARTER *et al.*

No. 13421. December 3, 1940. Rehearing denied December 18, 1940.

*Wade H. Watson,* for plaintiff.

*Highsmith & Highsmith,* for defendants.

REID, Chief Justice. This suit by Mrs. E. E. McNeal against Mrs. D. M. Carter et al. is for trespass and injunction as to the cutting of standing timber, and thereby incidentially involves the title (*Bunger* v. *Grimm,* 142 *Ga.* 448 (8), 83 S. E. 200 Ann. Cas. 1916C, 173) to a small piece of land near the forks of Satilla Creek and Fish Pond Branch in land lot 126 of the second district of Appling County. The verdict and judgment were in favor of the defendant. A motion for new trial was overruled, and the plaintiff excepted. Both parties claim under a common source of title, Nancy J. Altman, who originally owned the tract, now held in part by the plaintiff and in part by the defendant; and the contest is over the location of the dividing line between them. The first conveyance out of the common source is to T. B. Crapps, under whom defendant holds. It is by a deed dated January 29, 1903, conveying "75 acres, more or less, of lot of land No. 126, bounded on the east by original land lines, on north by lands of J. M. Brown, on west and south by a certain branch and Satilla Creek, the said lands being in the 2d land district of said county." The other deed from the common source is dated January 31, 1916, and is to all that parcel of land in 2d District of Appling County, "being the tract of 130 acres of lot of land No. 126, bounded on the north by original land line, on west and south by Satilla Creek, on east by a certain branch known as Fish Pond Branch." This passed by mesne conveyance into the plaintiff.

It appears that the timber which was cut would be on plaintiff's land but for an agreement, set up by the defendant, that at the time Mrs. Altman conveyed to Mr. Crapps in 1903 the vendor and the vendee entered into an agreement by which, instead of the branch being the boundary throughout, a straight line should be blazed for a short distance which should be treated as the line there; the reason for this being that the branch at this point ran into what is called a baygall (i.e., low-lying land matted with vegetable fibers and often with gallberry and other thick-growing bushes), making the identification of the run of the stream difficult of exact ascertainment. Trees were blazed along this line for the distance of it, about 200 yards.

The defendant relies on the rule on this subject as stated in

*Bradley* v. *Shelton,* 189 *Ga.* 696 (4) (7 S. E. 261): "An unascertained or disputed boundary line between coterminous proprietors may be established either (1) by oral agreement, if the agreement be accompanied by actual possession to the agreed line or is otherwise executed; or (2) by acquiescence for seven years, by acts or declarations of owners of adjoining land, as provided by the Code, § 85-1602." *Williamson* v. *Prather,* 188 *Ga.* 545 (4 S. E. 2d, 140); *Ingram & LeGrand Lumber Co.* v. *McAllister,* 188 *Ga.* 626, 630 (4 S. E. 2d, 558). There is, however, a difference between settling a land-line dispute and an agreement, made at the time of a sale of land and the execution of the conveyance thereunder, that the boundaries stated in the conveyance should not control. For example, in *Miller* v. *McGlaun,* 63 *Ga.* 435, there was an agreement that instead of the boundary between the two tracts following the land-lot line, as stated in the deed, a creek which approximated the land-lot line in direction should be the boundary. It was held: "A verbal agreement that a creek should be the line between two adjoining proprietors of land, made, not with a view to settle any dispute in respect to what is the true original line between the two lots, but to set up a totally different and independent line, with no occupancy of the part in dispute, either by enclosure or clearing, can not be set up so as to affect a subsequent purchaser without notice of such agreement, who takes a deed with no description but the original lines." See *Taylor* v. *Board of Trustees,* 185 *Ga.* 61 (194 S. E. 169).

It is not contended in this case that the blazed line was agreed on between two coterminous owners as a compromise of any doubt as to where the line named in the deed was, because at that time the vendor owned the entire tract and could convey according to whatever boundaries might be agreed on. They merely blazed this line and agreed on it, in order to keep from having to go into the baygall to identify the run of the branch. Instead of making the deed correspond to this deviation, they stated the branch as the boundary. At most the vendee obtained only equitable title to the land beyond the boundary stated in the deed; and in the absence of such physical possession as of itself to constitute notice of the equity, a subsequent purchaser from the same grantor, without notice, would acquire the superior title. The blazing of a few trees in a marsh or swamp and the occasional or sporadic cutting

of timber over the boundary line would not constitute such possession as to execute the agreement or to give notice of it. Powell on Actions for Land, § 330; *Dillon* v. *Mattox*, 21 *Ga.* 113 (2); *Royall* v. *Lisle*, 15 *Ga.* 545 (3) (60 Am. D. 712); *Hilton* v. *Singletary*, 107 *Ga.* 821, 827 (33 S. E. 715). Under this view the judge erred in overruling the plaintiff's motion for new trial.

*Judgment reversed. All the Justices concur, except Atkinson, P. J., who dissents.*

### ON MOTION FOR REHEARING.

REID, Chief Justice. It is contended that there was a short gap between the boundary branch on the west and the boundary creek on the south, and that this necessarily rendered the western boundary of the tract now claimed by the defendants uncertain and indefinite, and that because of these physical facts it was necessary in the interest of certainty and definiteness that the parties to the original transaction fill up this gap by agreeing upon an artificial line. The boundary branch referred to by the movants (defendants in the court below) is the branch designated in the testimony and in the deed under which the plaintiffs claim, as Fish Pond Branch, and it is suggested that we have overlooked testimony of the first vendee from the common source to the effect that this branch flowed into a slough or baygall, a wide flat swamp with a lot of undergrowth, and according to the testimony of this witness the branch ended on entering the slough or baygall. According to the testimony of the same witness, from the point where it was contended the branch thus ended, he in the presence of the husband of his vendor crossed over to dry land, and marked trees from that point to Satilla Creek along a straight line, leaving the slough or baygall some distance to the east. The timber in controversy was situated on the tract lying between this "artificial line" and the slough or baygall. The movants invoke the rule that where a line is disputed or unsettled and indefinite, coterminous landowners may by oral agreement establish a line, and that such agreed line would become binding between the parties to such agreement and purchasers from either without notice. The following among other decisions are relied on: *Bridwell* v. *Brown*, 48 *Ga.* 179 (3); *Farr* v. *Woolfolk*, 118 *Ga.* 277, 280 (45 S. E. 230); *Osteen* v. *Wynn*, 131 *Ga.* 209 (3) (62 S. E. 37, 127 Am. St. R. 212); *Shiver* v. *Hill*, 148 *Ga.* 616 (97 S. E. 676); *Hart* v.

*Carter,* 150 *Ga.* 289 (103 S. E. 457). We do not think the rule as to settlement of uncertain and indefinite dividing line is applicable under the facts of this case.

The deed under which the defendants claim, being the first deed from the common source, described the land as bounded on the west and south by a certain branch and Satilla Creek. The evidence showed without dispute that the branch thus referred to was Fish Pond Branch. The deed under which the plaintiffs claim, being the second deed from the common source, described the land as bounded on the east by Fish Pond Branch and on the south by Satilla Creek. It appeared without dispute that the branch and creek, except in times of drought, were connected by a slough formed by normal flow from the branch and flow or backflow from the creek. In these circumstances, both deeds should be construed as fixing the boundary by the branch and the creek, with the slough considered as a part of the waters, either of the branch or the creek, or the waters of both, and as being the connecting link between these two streams for the purpose of boundary if they did not connect directly, as was implied by both deeds.

Just where the line should be fixed as within the area of the slough, or baygall as it was sometimes called,—whether on one or the other of the opposite banks or at some intermediate place, is not a question for decision in this case, since, as indicated in the original opinion, whatever might be the true dividing line within this area, the timber in controversy was situated clearly without the space or area covered by such slough or baygall. While this statement might still seem to leave the true line indefinite and uncertain to a limited extent, yet under a proper construction of both deeds such uncertainty must be limited to the area described in the testimony as the slough or baygall, and so in any view as to where the line should be located in reference to this area, the testimony as to such oral agreement was irrelevant and inadmissible as attempting to establish an artificial line entirely apart from anything described in the deed as the boundary line and contrary to the written terms thereof. Accordingly, such agreement between the common vendor and the vendee under whom the defendant claims was not binding upon the subsequent vendee under whom the plaintiffs claim.

The boundary as stated in the deed to the latter vendee should,

as in the deed to the former vendee, be construed as defining the branch and the creek as the boundary line, treating them as connecting streams, subject to what has been said above as to the slough or baygall; and if the line as thus defined should be indefinite at any point, it should nevertheless be determined within the area of the slough or baygall, consistently with the deed under which the defendants claim.

The oral agreement, having thus sought to establish a line in utter disregard of the boundary defined in the first deed and in contradiction thereof, was ineffectual as against a subsequent purchaser without notice, and under the evidence as a whole the verdict in favor of the defendants was contrary to the evidence and without evidence to support it.

The movants themselves refer to an "artificial line," which they contend was established by the oral agreement. The parties to the deed under which the movants claimed could not at the time of its execution establish by oral agreement an "artificial line" contrary to the terms of the written instrument, such as would be binding on a subsequent innocent vendee from the common vendor.

The foregoing deals with the substantial question raised in the motion for rehearing, even if some subsidiary questions may have been argued. It follows from what has been said that the motion for rehearing is without merit, and is denied.