33990. ROWLAND *v.* McLAIN.

*W. L. Ferguson,* for plaintiff in error.

*R. R. Jones,* contra.

SUTTON, C.J.   G. K. McLain sued L. O. Rowland for $4000, the alleged value of 50,000 feet of timber, alleged to have been wilfully cut, removed, and converted by the defendant, in 1946, from the land of the plaintiff, described as a tract of 50 acres, more or less, located in the southwest corner of lot of land No. 296 in the 4th Land District of Terrell County, Georgia.

The defendant in his answer denied the material allegations of the petition, and alleged that the plaintiff was not the owner and in possession of the described tract of land, and further alleged that he was an innocent trespasser and set up the quantity and value of the timber cut and removed by him from the described tract of land.   The jury returned a verdict for the plaintiff for $500.   The defendant's motion for a new trial was overruled, and he excepted.

It appears from the evidence that the plaintiff's claim of ownership to the 50-acre tract of land from which he says the defendant cut some of his timber was based on a prescriptive title, which he contended he had acquired by actual adverse possession of said land for a period of twenty years.   He admitted that he had no written evidence of title to the land in question.   The controlling question in this case is whether the evidence was sufficient, under the law applicable thereto, to authorize the jury to find that the plaintiff had acquired title by prescription to the land in question by reason of twenty years' actual adverse possession of said land.

The evidence shows substantially that the W. L. Gumm farm, which was located in land lot No. 296 in the 4th land district of Terrell County, Georgia, originally contained 154 acres, more or less, there being approximately 104 acres on the east side of Herodtown Creek, which traversed said lot, and about 50 acres on the west side of said creek.   W. K. McLain, in 1918, purchased the portion of the W. L. Gumm farm located on the east

side of Herodtown Creek in land lot No. 296, and took a deed thereto from the Georgia Loan & Trust Company. W. K. McLain lived in Atlanta and Texas, and he employed his cousin, G. K. McLain, who is the plaintiff in this case, to look after the W. L. Gumm farm for him. G. K. McLain testified: that he thought W. K. McLain bought the entire W. L. Gumm farm; that he as agent for W. K. McLain was in possession of the whole farm from 1918 to August 25, 1922; that W. K. McLain, on August 25, 1922, made a warranty deed to G. K. McLain to a one-half undivided interest in the 104-acre tract of lot 296 on the east side of Herodtown Creek, and that he, G. K. McLain, then discovered that W. K. McLain did not own the portion of the Gumm farm located on the west side of said creek, the 50-acre tract here involved, and then took the 50-acre tract over for himself, without having any deed or writing thereto and without paying anybody anything therefor. W. K. and G. K. McLain made a loan deed to the Atlanta Trust Company, conveying the 104-acre tract in lot 296 on the east side of the creek; the loan was not paid; the loan deed was foreclosed, and the land was sold and bought in and then conveyed to Archie P. Miller. Miller had owned said tract on the east side of the creek for a number of years prior to the time the defendant cut some timber on the 50-acre tract west of the creek. G. K. McLain testified: that he claimed the 50-acre tract in question from August 25, 1922, when he discovered that W. K. McLain did not own it; that he sold some timber from this land four different times during the years 1923 and 1924; that he cut wood and peanut poles from this land at unstated intervals from August 25, 1922, to the year 1942; that he did this almost every winter when he needed the same for his farm use; that from 1942 to 1946 he did not cut any peanut poles or wood on the land, but that he rode around the road and looked at the timber and kept up with it that way; that he never lived on the land in question, never fenced or enclosed it, never put any improvements on it, and never cultivated any of it; that the land was woodland and swampland, partly covered with mud and water; and that he owned other swampland and exercised the same control and possession over that land as he did over the swampland involved in this case.

The evidence further shows that L. O. Rowland, the defendant, purchased from I. O. Rice, in 1944, certain timber in lot No. 297, adjoining the 50-acre tract here in question, and that Rowland, while cutting the timber he had bought on lot 297, got over the line and cut some timber on the tract in dispute. Rowland admitted that he cut timber across the line on the 50-acre tract in lot 296, but he denied that the plaintiff owned that tract of land and denied that the plaintiff had any right to recover against him in this suit.

In order for a plaintiff to recover in an action of trespass as to land, it is essential for him to show title in himself or possession. *Ault v. Meager,* 112 *Ga.* 148 (37 S. E. 185); *Clower v. Maynard,* 112 *Ga.* 340 (37 S. E. 370); *Bruce v. Strickland,* 201 *Ga.* 526 (1) (40 S. E. 2d, 386). As above stated, the plaintiff claimed title by prescription to the 50-acre tract of land in question by reason of his claim of actual adverse possession thereof for twenty years; and the burden was on him to show title in himself to the land before he would have been authorized to recover, as his action was based on such claimed title. "Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by the laws." Code, § 85-401. "Possession to be the foundation of a prescription must be in the right of the possessor, and not of another; must not have originated in fraud; must be public, continuous, exclusive, uninterrupted, and peaceable, and be accompanied by a claim of right. Permissive possession cannot be the foundation of a prescription, until an adverse claim and actual notice to the other party." § 85-402. "Actual possession of lands is evidenced by inclosure, cultivation, or any use and occupation thereof which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another." Code, § 85-403. "Actual adverse possession of lands for 20 years, by itself, shall give good title by prescription against every one, except the State or persons laboring under the disabilities hereinafter specified." § 85-406.

To acquire title by prescription by actual adverse possession, it must be such possession as is defined in the foregoing Code sections. The elements of adverse possession are set out in Code

§ 85-402 as above quoted, and Code § 85-403 tells us how actual possession is evidenced. The undisputed evidence shows that there were no improvements on this land; it was woodland and swampland, and none of it had been cultivated or inclosed. Did the cutting of some timber on this land during the years 1923 and 1924 and the cutting of peanut poles and wood for farm use (the evidence does not show how much or to what extent) each fall or winter from 1922 to 1942 constitute such actual adverse possession as is contemplated by the foregoing statutes? "The mere occasional cutting of timber will not amount to actual possession of land." *Robertson* v. *Abernathy,* 192 *Ga.* 694, 698 (16 S. E. 2d, 584). "The roaming of cattle and hogs, the posting of signs forbidding trespassing, driving away hunters from time to time, all of which was on a large area of swamp woodland which embraced the land in dispute, does not amount to actual possession within the meaning of the law pertaining to title by prescription." *Fitzpatrick* v. *Massee-Felton Lumber Co.,* 188 *Ga.* 80 (7) (3 S. E. 2d, 91). "It is a well-settled rule, which has been repeatedly recognized by this court, that an occasional cutting and appropriation of timber is not such a possession of land as will ripen into title by prescription as against the true owner. It is not such an act of ownership as will constitute adverse possession." *Hilton* v. *Singletary,* 107 *Ga.* 821, 827 (33 S. E. 715). "The cutting of timber will not constitute an adverse possession of the land, nor will proof of particular acts at different times create a statutory title." *Durham* v. *Holeman,* 30 *Ga.* 619 (4). It was said in *Watts* v. *Griswold,* 20 *Ga.* 732, 733 (65 Am. D. 647), "We can hardly conceive of a case where such acts as these would perfect a statutory title. The fallen logs removed for lightwood and firewood, and which constitute no part of the *realty,* would scarcely be missed or observed by the owner, unless very familiar with his grounds; and the timber cut and carried away for lumber would only indicate by the stumps and tops which were left, that some wrong-doer or wrong-doers were making pretty free use of that which did not belong to them; but this would fall far short of conveying to the tenant in fee, notice that his right to his domain was seriously controverted. Unlike the building a house, the cultivation of a field, the digging a mine, or

even the belting of a pine forest for turpentine, the acts of trespass, established by the evidence, are too roving and discursive to suggest the idea of a *continuous* possession." It has been held: "Whether or not the cultivation of a turpentine farm upon a tract of land is such an occupancy as may be the basis of a prescriptive title to the land itself, is a question of fact dependent upon the character of the possession, the extent of the visible signs of occupancy and its continuance; and ·a charge is not erroneous which submits such question for the consideration of a jury." *Flannery & Co.* v. *Hightower,* 97 *Ga.* 592 (3) (25 S. E. 371). In that case (pp. 606, 607), "according to the evidence as it is disclosed by the record, it appears that every pine tree upon the tract of ·land, available for that purpose, had been boxed and worked for turpentine purposes; that in the process of boxing, hacking, dipping, scraping and racking around the trees, there was scarcely a day in the year upon which there was not some servant of the defendants actually employed upon this tract of land, at work in such a manner as to indicate to the most casual observer a purpose upon the part of the person in possession to appropriate the land to his own exclusive use, rather than as indications of mere predatory invasions of the property by a casual trespasser. Upon this evidence, the court submitted to the jury the question as to whether such occupancy was so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another; and we think not only that the evidence justified the instruction of the court upon that point, but justified a finding by the jury of such an occupancy in accordance with the instruction." Also see *Walker* v. *Steffes,* 139 *Ga.* 520 (6, 7, 9 b) (77 S. E. 580), to the same effect.

Counsel for both parties have cited numerous cases upon which they rely to support their respective contentions; but it seems that the case of *McCook* v. *Crawford,* 114 *Ga.* 337 (40 S. E. 225), is applicable to the present case. It was there said (pp. 338, 339): " 'Actual possession of lands is evidenced by inclosure, cultivation, or any use and occupation thereof which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another.' Civil Code, § 3585 [now Code, § 85-403, supra]. To acquire a title

by prescription it is necessary to have, for the time required by law, such a possession as is defined in the foregoing section of the Code. The land being uninclosed and unimproved and not under cultivation, were the acts of ownership set forth in the amendment to the plaintiff's petition of such a character as to attract the attention of adverse claimants or exclude actual occupancy by another? That the plaintiff repeatedly occupied the lands for the purpose of cutting timber, and continuously used the same for the purpose of range for cattle and hogs, would not, in our opinion, be such an actual possession as is contemplated by the Code. It is argued, however, that under the allegations of the amendment the land in question was unfit for actual physical occupancy as well as for cultivation, and that its only value consisted in its use for the purposes for which the plaintiff did use it, and that therefore he was in actual possession of the same as fully as the nature of the property would admit of. All this may be true, and still there is no reason alleged why the property could not be in some manner inclosed so as to make this evidence of possession notorious and exclusive within the meaning of the Code. The fact that the land was situated in a swamp of a river would not necessarily prevent it from being inclosed in such a manner as to attract the attention of adverse claimants; and while a fence erected for the purpose inclosing the land might be destroyed or washed away in times of high water, it could promptly be replaced so as to make the possession continuous within the meaning of the law. That it would be expensive and troublesome to keep such property inclosed would not alter the law in reference to the subject of what amounts to actual possession, but would be simply a necessary burden to be borne by an owner of property of this character. But let it be conceded, for the sake of the argument, that it is impossible to inclose the land, that it is impossible to cultivate the land, that it is impossible to put the same to any use or occupy it in any manner which would be so notorious as to attract the attention of adverse claimants; still the plaintiff fails to make a case by his allegations, for the reason that, if this state of affairs exists, title to the property can not be acquired by prescription, because, when the character of property is such that it is impossible to be in actual possession thereof,

title thereto can pass from one to another only by written evidence of title."

Furthermore, the plaintiff testified that he took charge of this land knowing that it did not belong to him and without paying anybody anything for it. In this connection, see *Cowart* v. *Young*, 74 *Ga.* 694 (1); *Ellis* v. *Dasher*, 101 *Ga.* 5, 9 (29 S. E. 268); *Kelley* v. *Tucker*, 175 *Ga.* 795, 799 (166 S. E. 187).

We are of the opinion, and so hold, that the evidence was insufficient, under the law applicable thereto, to authorize the jury to find in favor of the plaintiff, and the court erred in overruling the defendant's motion for a new trial on the general grounds.

*Judgment reversed.   Felton and Worrill, JJ., concur.*