ARNOLD *v.* BARNETT.

1. Where a purchaser takes only a bond for titles from his vendor and leaves the latter in possession as his tenant, a subsequent *bona fide* purchaser for value from the same vendor, who takes a conveyance without any notice of the tenancy or of the previous bond for titles or of any right or equity in the first purchaser, acquires the title paramount.
2. Under the pleadings, so far as appears by the record, there was no foundation for any charge to the jury on the subject of collecting a loan out of other property in order to disencumber the property sued for in this action, the question here involved being one of title only.

May 16, 1892. By two Justices.

Title. Notice. *Bona fide* purchaser. Charge of court. Before Judge Marshall J. Clarke. Fulton superior court. September term, 1891.

Complaint for land (a city lot) was brought by Barnett against Arnold. No pleading other than the declaration appears in the record. The verdict was in favor of the plaintiff, and the defendant excepted to the overruling of his motion for a new trial. The title under which the plaintiff claimed was a deed in fee simple to him from Powell, dated August 20, 1888. July 31, 1888, Mrs. Payne conveyed the land in dispute to Powell. August 11, 1888, the defendant took from the agents of Powell an instrument acknowledging receipt of $20, and reciting a sale of the land in dispute from Powell to the defendant for $800, $150 cash and $40 every three months; also reciting an agreement by Powell to lease from defendant the premises for one year at ten dollars per month. August 13, 1888, Powell made to the defendant a bond for title to the land in dispute, acknowledging receipt of $150, and obligating himself to make warranty title on payment of $650 more, for which the defendant gave his notes. August 20, 1888, Powell made to the plaintiff a deed to the land in dispute and three other city lots, in consideration of $900. This and the deed from Mrs. Paine to Powell were both recorded September 19, 1888. October 11, 1888, Powell made to the defendant a deed to the premises in dispute, in consideration of $800.

Testimony by the plaintiff: I had loaned money to Powell on this land, his purpose in obtaining the loan being to improve the land. I advanced all the money to him to build the house on it. He held a contract from Mrs. Payne to make him a title to the premises in dispute. I investigated her title which, after about six weeks, I cleared up. He had no title except from Payne; he said this to me at the time I was investigating

the title.  By an agreement with him I was to advance
the money to pay Mrs. Payne.  She sent a deed from
herself to Powell to her agents; it was improperly exe-
cuted, and was returned to her residence in North Car-
olina; and a second deed properly executed was sent
by her to the same agents, dated July 31, 1888, but it
did not arrive here until after August 20, 1888, on
which day I made a straight out purchase from Powell
of the property covered by the deed of that date, and
the deed was then executed.  When the second deed
from Mrs. Payne came, I went to the agents, paid them
the money for her according to my agreement with
Powell, and exhibited to them his deed to me; where-
upon they delivered to me her deed to him.  These
two deeds I carried at once to the clerk's office and
had them recorded together immediately.  Powell never
had possession of the deed of Mrs. Payne to him.  I
never collected any rent from him nor attempted to do
so, or to charge him any.  The other three lots in this
same deed were mortgaged, and there was nothing in
them except an equity of redemption; in fact all of the
property was mortgaged, but the equity of redemption
of the whole of it was worth about $900.  When I
took the deed from Powell I knew nothing of defend-
ant's claim.  Before July and up to August 20, 1888,
Powell was building the house and store on the premises
in dispute.  I had a talk with defendant in the spring
or summer of 1889, and in this way I first learned of
the existence of his claim.  In that conference I did
tell him that after I bought the property from Powell I
had told Powell he could redeem it by paying me what
he owed me.  I never told Powell this and gave him
that option until some time after August 20, 1888; and
I think I said something like this to defendant.  On
August 20, 1888, or within the previous week, I had not
seen the premises.

Testimony for the defendant:  August 13, 1888,

Powell sold for value to Redwine all the notes which defendant had given for the deferred payments, and delivered to Redwine a deed in escrow to the defendant for the premises in dispute, to be delivered to defendant when he paid for the land. This deed was taken up for some mistake in it, and Powell delivered to Redwine the one dated October 13, 1888. Powell paid defendant three months' rent for the property at $10 per month, beginning on August 13, 1888. Defendant bought the property from the agents who executed the agreement of August 11, 1888; previously had other land transactions with them, and relied on them to investigate this title; looked at the premises two or three times before he bought; put Powell in possession as soon as the agreement of lease was signed; went there two or three days after the bond for title was signed, and found Powell occupying and running the store with a stock of goods. At the time of defendant's purchase the store was in a condition to be occupied. Powell staid there five months; after he left, defendant put another tenant in possession. Prior to opening the store Powell was on the premises building a house and store. Recently the house burned, and defendant had no insurance on it. About six months after the defendant bought, he saw the plaintiff, who told him Powell had made him (plaintiff) a deed to the property to secure a debt, that he (plaintiff) had put this property in with other property simply to make his security good, that he could make his money out of the other three lots. Before Powell began to run the store no one occupied the premises.

The motion for new trial contains the general grounds and the following:

The court charged: "Possession by Powell after the execution of his bond for titles to defendant would, if shown by the evidence, have amounted to notice to

v 90-22

plaintiff of the character of such possession, and if the possession was that of a tenant for defendant, then notice of such tenancy and the claim of the defendant, unless according to the evidence Powell was, before the making of such bond and continuously up to its date, in possession of his own right, and this was known to plaintiff." The error assigned is, that the qualification beginning with the word "unless" is not law, the defendant contending that the plaintiff was charged with notice of the defendant's claim when Powell's possession of his own right changed to possession as the tenant of defendant.

Error in refusing to charge, as requested, "that if Mr. Barnett's deed was only a mortgage to secure the payment of money, that if his other lots in the deed would be sufficient in value to pay him his money, he ought to sell them and apply the proceeds to payment of his debt, and if they were sufficient, that the plaintiff could not recover this fourth lot from Mr. Arnold."

ARNOLD & ARNOLD, for plaintiff in error.

BIGBY, REED & BERRY, *contra.*

BLECKLEY, Chief Justice.

1. Both parties claim under Powell, who derived title from Mrs. Payne by a deed bearing date July 31st, 1888. On August 11th in the same year, Powell contracted with Arnold, the defendant below, to sell the premises to him, and from that time forward held possession as his tenant. On the 13th of the same month, only two days after the contract for sale and tenancy was made, he executed a bond for titles to Arnold, transferred to Redwine Arnold's purchase money notes, and put in the hands of Redwine, as an escrow, a deed conveying the premises to Arnold, to be delivered by Redwine when the purchase money notes were paid. On the 20th of the same month, being then in posses-

sion, Powell sold and conveyed the premises to Barnett, the plaintiff below, Barnett paying his money and re-- ceiving the deed without notice, so far as appears, of any of the transactions between Powell and Arnold, or between Powell and Redwine. This deed was recorded in the following month. In October of the same year, the deed which had been delivered to Red- wine in escrow was cancelled or taken up and another, dated October 11th, was substituted in its stead. Neither of these escrow deeds, so far as the record dis- closes, was ever recorded. The sum of the matter is, that whilst the formal legal title was in Powell and he was in possession, he sold and conveyed to Barnett, an innocent purchaser who is not charged with any notice either of an adverse title or an adverse equity. Bar- nett's deed was duly recorded, and there is no re- corded deed competing with it. Under these circum- stances he acquired the title paramount; that is, all the title which Mrs. Payne conveyed to Powell.

2. We find nothing in the pleadings on which to base any charge to the jury on the subject of collecting a loan out of other property in order to disencumber the premises sued for. The pleadings put nothing in issue but the title. There was no error in denying a new trial.                        *Judgment affirmed.*