## GEORGIA RAILROAD AND BANKING COMPANY *v.*
## CITY OF ATLANTA.

1. Private property can not be taken for public use without payment therefor; nor can this end be obtained under a claim of dedication, unless it appears that the owner has expressly given the property, or, by his long-continued acquiescence in the exclusive use thereof, signified an intention to devote it to public purposes.

2. Not only must the owner give, but the public must accept, before there can be a dedication.

3. An acceptance is peculiarly necessary in the case of an alleged dedication of a street, since it may be a burden on the municipality, imposing the responsibility of care and maintenance, with the consequent liability for injury to person and property occasioned by defects therein.

4. In every case of an implied dedication it must appear that the property has been in the exclusive control of the public for a period long enough to raise the presumption of a gift.

5. The fact that the public uses an approach to stations or depots is not inconsistent with the retention of private ownership by the company owning the depot.

6. Where it appeared that there were no sidewalks, no curbing, no lights, and that the strip had not been worked by the city, but was used by the railroad company as an approach to a place at which cars were loaded and unloaded, and was kept in repair at the expense of the company; and where there was positive evidence that the company had not intended to dedicate, but simply permitted the use of the land by pedestrians and vehicles, the evidence was insufficient to establish the dedication as a street.

7. Equity will not interfere with the enforcement of criminal laws, nor aid or obstruct criminal courts in the exercise of their jurisdiction; but that principle does not deprive a court of equity of its power to protect private property, nor defeat its right to enjoin a continuing injury to property or business.

8. Where it is manifest that a criminal prosecution is threatened for the purpose of preventing the exercise of civil rights conferred by law, injunction is the proper remedy to prevent injury to the property or business thus menaced.

Argued July 10, — Decided August 12, 1903.

Petition for injunction. Before Judge Lumpkin. Fulton superior court. April 18, 1903.

The petition of the Georgia Railroad and Banking Company against the City of Atlanta alleges, in brief, that the plaintiff claims title to and possession by its tenants of a strip of land in the city, between the tracks of its railroad on the north and the lands of the Fulton Bag and Cotton Mills and others on the south; that it acquired title to this strip in 1844, by deed of Benjamin Little conveying to it land of which this was a part, and has never parted

with its title; that the strip is necessary to it and to its tenants as a part of its railroad ; that in 1902 it undertook to enclose the strip with a fence, when the city engineer objected and threatened to prevent with force the work of enclosing; that the plaintiff thereupon desisted, and presented to the city a petition setting forth these facts and praying that the city desist from interference with the plaintiff's rights as proprietor, but the city refused the petition and asserted the city's claim to the strip, the claim being that the strip is a street of the city, known as " Badger street;" and this claim of the city and the entry of the strip on the map of the city as " Badger street" are a cloud on the plaintiff's title to the land. Waiving discovery, the plaintiff prays, that the city be enjoined from interfering with it and its tenants in enclosing the strip and in exercising the rights of an owner in fee; that the plaintiff be decreed to have title thereto against the city ; for cancellation of all writings and documents by which the city makes claim to the strip; and for general relief.   By amendment the plaintiff sets out a copy of an ordinance of the city, prohibiting obstruction of the streets, and alleges that enclosing the strip by the plaintiff would result in arrest and in a multiplicity of prosecutions under this ordinance; also that the action of the city in interfering with the plaintiff in enclosing the strip is a taking of the plaintiff's property without due process of law.   The defendant demurred generally to the petition, and filed an answer which is not in the record sent to the Supreme Court.

At the hearing " it was admitted as a fact, between counsel for the parties, that the Georgia Railroad and Banking Company owned a lot of land at this point, containing a number of acres, originally owned by Benjamin Little; that the . . company sold off portions of this land to the south of its railroad tracks; the deeds of conveyance bounding lots conveyed nearly all the right of way of the . . company, and the subsequent deeds of conveyance from the original purchasers to the present abutting owners gave as the northern boundary the right of way of the Georgia Railroad and Banking Company; these deeds of conveyance were dated something like twenty years ago;" also that there appears on the building of the Beutell Manufacturing Company, indicated on the plat, a sign, bearing the words " Badger street," a foot and a half or two feet long, with letters three inches high ; that this sign was put

there by the city, at a date unknown; "the buildings facing towards the railroad between Factory street and Powell street have numbers put thereon, the numbers being the city numbers and being in letters between two and three inches high; the buildings between Wyman and Factory streets have numbers placed on them by the property owners, being letters from three to four inches high. It is not known when this numbering was done. The Beutell Manufacturing Company also has numbers on it, put there by the property owners." The buildings mentioned front on the strip in question, and some of them are residences. Powell, Wyman (or Weyman), and Factory streets intersect it. Its width is about fifty feet. It appears from the evidence that it has never been enclosed. From time to time the railroad company built side-tracks parallel to its main track, until the distance between the southernmost tract (which was built in 1900) and the property line south of it was about twenty-four feet. Spur-tracks extend across this space, one of them to within five feet of the abutting property and another into the factory yard of the Fulton Bag and Cotton Mills. For upwards of twenty-three years the strip has been used as a place for the unloading and delivery of freight from cars standing on the side-tracks, and as a driveway for wagons and drays of customers receiving freight. The railroad company from time to time ditched it, put cinders on it, and otherwise improved its condition as a driveway for the benefit of the company's customers. Stones on which are the letters "Ga. R. R.," and which have the appearance of having stood for many years, are at various points along the line of the abutting property at the south of the strip. Officers of the company testified that the strip had never been worked or kept in repair by the city; that its use by the public or persons passing over it was merely permissive on the part of the company; that in leaving it open there was no intention to dedicate it to public use as a street, and that so far as they knew the city had never exercised jurisdiction over it as a street and had not laid any claim to it until recently, when the city engineer interposed objection to the construction of a fence across it. The defendant introduced in evidence a map made in 1893, in which this strip was designated as "Badger street," and there was evidence that as far back as ten years ago a sign bearing that name was put up on the "street." According to the testimony of persons who have resided

in the neighborhood for many years — some of them as long as thirty-five years, the strip has been used continuously during all that time by the public generally as a thoroughfare and "in all the ways in which a street is used and occupied." The court refused an injunction, and the plaintiff excepted."

*Joseph B. & Bryan Cumming* and *Sanders McDaniel*, for plaintiff. *James L. Mayson* and *William P. Hill*, for defendant.

LAMAR, J. As dedication implies a gift and involves an active, not a passive, state of the donor's mind, the owner may testify as to his intent, though that may be overcome by conduct inconsistent with his testimony. City of Chicago *v.* Chicago Ry. Co., 152 Ill. 561. Here there was no evidence to rebut the testimony of the officers of the company that there had been no purpose to dedicate this land as a street, and its conduct in repairing the same for its own private use, and its action in building tracks longitudinally along the strip was inconsistent with the theory that it had been set apart as a street. *Davis* v. *E. T. R. Co.*, 87 *Ga.* 605. Not only must there be an intent to give, but, in case of streets, there must be evidence of an intent to accept. Streets are not an unqualified benefit to a municipality; they impose responsibilities, and the acceptance should be by some explicit act on the part of the authorities, and not by vague, indefinite, and inconclusive actions on the part of a body of citizens loosely called the public. *Parsons* v. *Trustees*, 44 *Ga.* 537. There were no sidewalks, no curbing, no evidence that the city had ever put the land in condition for travel, and nothing to indicate that the municipality had ever treated it as a public street. The case comes squarely within the rule applicable to squares and areas around stations, depots, wharfs, and other places of a quasi-public character, and to which the public at large are invited. The fact that streets or roads enter such open spaces from various directions, and that pedestrians and vehicles pass across the square for the purpose of going from one road to another, does not of itself show that the space has been dedicated to a public use, nor does the necessary exclusive possession by the city arise where the space has been kept open and in repair by the company for its private business, and where the work of maintenance has been at its own expense. The fact that, without intent to make a dedication, the company permits the land to be used by

those who do not come thereon for the purpose of business with the company should not operate to defeat its title. Its indulgence ought not to be charged against it and used as a means of depriving it of property allowed to be enjoyed, but not intended to be given. That it does not capriciously warn off persons crossing the strip will not wipe out the effect of acts showing an intention to hold the property as its own. The public in a proper case may obtain the title by condemnation, if the other essential elements. are present. But no law of force in this State intends to take private property for public purposes, without payment therefor; nor will this end be attained under the name of dedication where there has not been an express gift by the owner, or where his long-continued acts have not indicated a purpose to set apart the property for. the public good. Williams *v.* N. Y. & N. H. Ry., 39 Conn. 509;. Irwin *v.* Dixon, 9 How. 32.

The city insists however, that the refusal to grant the injunction was proper, since equity will not interfere with the enforcement of criminal laws, nor aid or obstruct criminal courts in the exercise of their jurisdiction. Civil Code, § 4914; *Barnett* v. *Atlanta,* 109 *Ga.* 166; *Phillips* v. *Stone Mountain,* 61 *Ga.* 386.. But that principle in no way deprives a court of equity of its power to protect private property, nor ousts chancery of its jurisdiction over nuisances and trespasses, nor prevents the grant of injunctions. against threatened or existing wrongs (Civil Code, § 4913), nor defeats its power to enjoin a continuing injury to property or business. When equity acts in such instances, it ignores the criminal feature and exercises jurisdiction solely with reference to the effect of the act on property or business. Were this a contest between two private individuals, both claiming title to the land, the one in possession could have proceeded to build, and would have been protected against violent or forcible obstruction by the other claimant, until after he had established his title. The parties here are not on equal terms. The company was in possession, and was notified by the city engineer that if it attempted to build a fence. he would resist by force and arms; the demurrer admits that the city would aid this officer by prosecuting the agents of the company who might from day to day obey lawful orders. If the company is deterred from exercising its power as owner by the threat of prosecution, it is as much deprived of its right as if the chancellor had.

expressly restrained it from building the fence.　　In practical effect, therefore, the refusal to grant the railroad company an injunction against the city is the equivalent of granting the city an injunction against the company.　　The case is directly within the ruling in *City of Atlanta* v. *Gate City Gas Co.*, 71 *Ga.* 126, where the same ordinances were attempted to be used as a means of preventing the gas company from exercising the right to lay mains in the street, and where the court said, "Where it is manifest that a prosecution and arrest is threatened . . for the sole purpose of preventing the exercise of civil rights conferred directly by law, injunction is a proper remedy to prevent injury to the party thus menaced."　　An injunction should have been granted; and the judgment is　　　　　　　　　　　　*Reversed.　By five Justices.*