### KIRKMAN v. ASHFORD.

1. The evidence did not demand a verdict finding the property subject to the execution.

2. Under the circumstances of the case it was erroneous to refuse to allow the claimant's counsel, while interrogating the plaintiff on cross-examination, to ask as to the value of certain property which had been sold as the property of the firm of which the claimant's husband had been a member, through whom the claimant had received a bond for title to the property in dispute, where the answer expected from the witness would tend to show the solvency of the firm and its individual members, and the court was informed of the answer expected.

3. A contract of dissolution of a firm of which the claimant's husband was a member, which, among other things, recited that an interest in the property in dispute was included among the firm assets and in the

division of the property fell to the claimant's husband, was relevant; but its exclusion would not be cause for a reversal, it appearing that uncontradicted testimony as to its contents was admitted without objection.

4. Evidence that the claimant's husband and his copartner had never gone into bankruptcy was irrelevant.

5. Where material to the issue, the opinion of a witness as to his solvency may be given in evidence, provided it is accompanied by the facts upon which it is founded.

6. On the question whether a transfer of property from a husband to his wife was in good faith or for the purpose of defrauding his creditors, it was competent for the husband to testify as to his intent in making the transfer, the testimony to be considered with all the evidence bearing on the question.

7. Under the pleadings and the evidence no question was made as to whether, under the facts of the case, the claimant would be subrogated to the rights of the grantee in the security deed, or to the rights of a holder of the bond for title, subject to which the claimant purchased the land in dispute.

JULY 11, 1916.

Claim. Before Judge Pendleton. Fulton superior court. May 14, 1915.

*Hines & Jordan,* for plaintiff in error.

*Etheridge & Etheridge,* contra.

ATKINSON, J. W. T. Ashford, holding a security deed to two lots on Manigault street, executed by G. B. Kirkman and L. E. Kirkman, partners under the name of the Kirkman Plumbing Company, to secure certain notes made by them, recovered a judgment and caused the property to be levied on and sold. The price obtained was insufficient to discharge the debt, and the fi. fa. was levied on a lot on Lake Avenue, as the property of L. E. Kirkman, for the deficiency. A statutory claim was interposed by K. N. Kirkman, the wife of L. E. Kirkman; and on the trial the judge directed a verdict finding the property subject. The claimant's motion for new trial overruled, and she excepted.

1. While Clement A. Evans held a security deed for $1,000 to the land in dispute, Harvill, the owner of what is commonly called the equity of redemption, contracted to sell the land to the Kirkman Plumbing Company for $2,100. He was indebted on the books of the Kirkman Plumbing Company to the amount of $650. They gave him credit for the amount of such indebtedness, assumed the debt to Evans, executed their notes of $18.50 each, payable at intervals, aggregating $450, to cover the balance of the agreed pur-

chase-price, and received from Harvill a bond for title subject to the security deed to Evans. Shortly thereafter Harvill sold the notes to Ashford, and delivered to him a warranty deed in favor of the Kirkman Plumbing Company, to be held in escrow until the payment of the notes. In November before Ashford obtained his judgment in August of the ensuing year, the firm was dissolved and in the dissolution of the assets the Lake Avenue lot (the property in dispute) went to L. E. Kirkman, subject to the payment of the above-described debts against it, and the Manigault street lots and other real estate of the firm went to G. B. Kirkman, subject to the debts against them. At the same time the firm regularly transferred to L. E. Kirkman the bond for title executed by Harvill and also executed to L. E. Kirkman a warranty deed purporting to convey the property, subject to the debts against it. Later during the same month of November, L. E. Kirkman transferred the bond for title to the claimant, and also executed to her a warranty deed purporting to convey the property, subject to the debts. The consideration expressed in the papers between the husband and wife was natural love and affection and five dollars. As the notes to Harvill fell due they were promptly paid to Ashford, the transferee, by the several holders of the bond for title, the last of which was paid by the claimant after the plaintiff had obtained his judgment, at which time Ashford delivered to L. E. Kirkman for the claimant the deed from Harvill which he held in escrow. At a still later date the debt to Evans (which at the time amounted to $1035) was paid by the claimant, who applied to the purpose $851 of her individual money, and the balance was made up in part by her husband, and in part by money which she borrowed. Upon payment of the debt by her the security deed was duly canceled and surrendered. In addition to evidence in substance as stated above, there was evidence to the effect that at the time of the several transfers mentioned the firm was solvent, as was also L. E. Kirkman, and that none of the transfers were made for the purpose of hindering or delaying creditors, but were honest and in good faith. It thus appears that the evidence would have authorized a finding that, before the plaintiff obtained his judgment under which he was seeking to sell the land, the claimant had become the transferee of the bond for title, unaffected by fraud, and the bond for title represented all the interest that the firm or its individual

members had in the land at the time the claimant became transferee. The effect of a valid assignment of the bond for title under such circumstances would be to confer upon the assignee all the rights and equities to which the assignor was entitled under the bond. *Walker* v. *Maddox,* 105 *Ga.* 253 (31 S. E. 165). In virtue of the bond for title executed by Harvill and the several transfers thereof, nothing passed except equities in the property, because the title was outstanding under the security deed to Evans. Civil Code, § 3306; *Wood* v. *Dozier,* 142 *Ga.* 538 (83 S. E. 133). But the claimant acquired all interest which the obligor and the several transferees had in the property before the plaintiff obtained his judgment. The claimant, being an assignee of Harvill in virtue of his bond for title and the several transfers thereof, became vested with legal title to the property when the security deed to Evans was paid off and canceled. Civil Code, § 3309. As the jury would have been authorized to find that the claimant thus acquired the legal title, and that it was never vested in either of the defendants in fi. fa., it was erroneous to direct a verdict finding the property subject. In this connection see also *Burney Tailoring Co.* v. *Cuzzort,* 132 *Ga.* 852 (65 S. E. 140).

2. The motion for new trial also complains of certain rulings on the admissibility of evidence, with which it will be proper to deal, inasmuch as the case is to go back for another trial. The plaintiff testified as a witness in his own behalf; and on cross-examination the claimant's counsel asked what was the reasonable value of the two lots on Manigault street, and informed the court that he expected to prove by the witness that each of the houses was worth $1,500. It appeared that when the lots were sold at sheriff's sale both were bought in by the plaintiff for $500. The husband of the claimant testified that the Manigault street lots were of the value of $1,500 or $1,600 each, and his solvency as well as that of the Kirkman Plumbing Company was based largely on such valuation of the Manigault street lots. While the evidence of the claimant's husband, on the question of the valuation of the property, was sufficient to go before the jury, the jury might not give the same weight to his opinion of the value of the property as it would to that of the plaintiff. The plaintiff was a creditor, and the case involved transactions between partners and between husband and wife; and the solvency of the firm was ma-

terial as affecting good faith and tending to show the absence of fraud. Under these circumstances the witness should have been allowed to answer the question.

3. Another ground of the motion for a new trial complains of the rejection of evidence of a written contract of dissolution of the Kirkman Plumbing Company, which was as follows: "Georgia, Fulton County. This agreement made this 9th day of November, 1911, between G. B. Kirkman, party of the first part, and L. E. Kirkman, party of the second part, both of said State and county, witnesseth: That whereas both of said parties have been heretofore trading as partners under the name and firm style of Kirkman Plumbing Company, and whereas there have been several parcels of real estate conveyed by deed or bonds for title to said partners as a partnership, and whereas said partnership did on the— day of——, 1911, dissolve and become terminated without severing the interests held by each partner in said realty. Now, therefore, in order to settle their joint and common interest in and to said realty, said partnership and the members thereof have this day reciprocally executed conveyance of the Lake avenue lot to L. E. Kirkman, and all other of the said partnership realty to G. B. Kirkman, by proper transfers and conveyances; and it is hereby agreed between the parties that each respectively assume the debts and liabilities now remaining unpaid and that are a lien upon the property this day conveyed to him by the other or by the partnership, except taxes due upon said realty, which shall be paid by each of the parties contributing one half of the total amount of such taxes." In the same ground of the motion complaint is made of the refusal of the court to allow L. E. Kirkman, the husband of the claimant, to answer the question: "State whether or not this Lake Avenue property [the property in dispute] in division came to you." And the further question: "Whether the property as described in this deed from Harvill to Kirkman Plumbing Company, and from George Kirkman to yourself, and from yourself to Mrs. Kate Kirkman [claimant], conveys the part of the firm property that you took." To both of such questions it was stated an affirmative answer was expected. The dissolution contract, as well as the answer of the witness, was excluded on the ground of irrelevancy. The evidence, when considered in connection with the other evidence in the case, tended to explain the circumstances

under which the claimant derived title, to show how arose the liens or outstanding claims subject to which the claimant bought the property, and to show that the money which she paid was applied to legitimate claims against the property of her husband and the other member of the firm of Kirkman Plumbing Company, and to illustrate the good faith of the claimant and her husband in the transaction between them. Therefore it was not subject to the objection of being irrelevant. But the brief of evidence discloses that the plaintiff's husband was permitted, without objection, to testify to all that is certified to have been excluded, which was not controverted. Under such circumstances a new trial would not be granted on the ground of the exclusion of the evidence.

4. Complaint was also made that the court refused, on the ground of irrelevancy, to allow the claimant's husband to testify that he and his partner, G. B. Kirkman, had never gone into bankruptcy. This was clearly irrelevant, and there was no error in excluding the testimony.

5. While L. E. Kirkman was being examined as a witness, he was asked as to his debts and the debts of the firm of which he had recently been a member, and his individual property and that of the firm, and gave answer in regard thereto which tended to show that he was solvent at the time of the transaction between himself and his wife. After making such answer the question was propounded to him: "Will you state from the facts you have given whether at the time you made this transfer you were solvent or insolvent?" The answer was, "I was solvent." This answer was excluded on the ground that it was irrelevant. It was competent, after giving the facts upon which he based his answer, for the witness to say that he was solvent. *Crawford* v. *Anderson*, 6 *Ga.* 244, approved in *Moore* v. *Dozier*, 128 *Ga.* 90, 96 (57 S. E. 110). But, under the circumstances of the case, the refusal to allow the witness to state that he was solvent will not require a reversal.

6. Another ground of the motion for new trial complained of the rejection of the testimony of the claimant's husband, to the effect that in conveying the property to his wife, the claimant, it was not done with the intent to hinder or delay creditors. In this transaction the intent of the claimant's husband with reference to his creditors, among whom was the plaintiff in fi. fa., was involved, and it was competent for him to testify as to his intent. *Royce* v.

*Gazan,* 76 *Ga.* 79 (5); *Hale* v. *Robertson,* 100 *Ga.* 168 (27 S. E. 937); *Alexander* v. *State,* 118 *Ga.* 26 (44 S. E. 851).

7. The ruling announced in the 7th headnote requires no elaboration.　　*Judgment reversed. All the Justices concur.*