## FENDER *et al. v.* HODGES.

1. The motion to dismiss the writ of certiorari is denied.
2. Where one obtained and duly recorded a security deed in 1922, without notice of any kind of the existence of an unrecorded bond for title from his grantor to the same land dated in 1920, the former is entitled to priority in the distribution of the proceeds derived from the sale of such land. The same priority exists in favor of subsequent holders under duly recorded deeds as against a transferee of the bond, such transfer never having been recorded. The Court of Appeals erred in rendering a decision to the contrary.

No. 6608. August 16, 1928.

Certiorari; from Court of Appeals. 38 *Ga. App.* 78.

On January 22, 1918, Lovejoy and Baskins borrowed $2000 from Forman, executing to him a note and security deed to certain lands, and said deed was recorded on March 2, 1918. On January 15, 1920, Lovejoy and Baskins executed to Roberts et al. a bond for title describing the same land, conditioned to make them title upon their payment of purchase-money notes therefor. This bond for title was never recorded. Roberts took possession and held until January 1, 1927. On January 20, 1920, Roberts et al. borrowed

$2500 from Mrs. Hodges, giving her their note due January 20, 1921, and transferring to her the bond for title as security for payment of the note. This transfer was never recorded. On January 31, 1922, Roberts executed to Harry L. Winter Inc. a deed to the land to secure payment of a note for $5000, which security deed was recorded on February 14, 1922, at which time the $5000 was paid by Winter to Roberts. Winter took the Roberts security deed "without personal or direct knowledge of the existence of any bond for title or of the transfer" thereof to Mrs. Hodges. On February 13, 1922, Lovejoy and Baskins executed to Roberts a warranty deed to the same lands, which was recorded on March 21, 1922. On November 22, 1922, Forman transferred to the Continental Casualty Company the security deed and note received from Lovejoy and Baskins, which transfer was recorded on September 29, 1923. On February 26, 1927, the last-named company transferred to Mrs. Hodges the security deed and note transferred to it by Forman, and this transfer was recorded March 9, 1927. On February 18, 1922, Winter transferred to the Bennington County Savings Bank the security deed it had received from Roberts, which transfer was recorded March 14, 1922, the bank not having knowledge of the bond for title or transfer thereof. On November 6, 1926, said bank transferred to Carter all its right, title, and interest in the notes and security deed of Roberts to Winter, which transfer was recorded July 5, 1927, Fender having joined with Carter in purchasing said notes and security deed, though through oversight his name did not appear in this transfer. On September 6, 1927, Mrs. Hodges, as transferee of the Lovejoy and Baskins security deed containing a power of sale, sold the land to Fender and Carter for $7500, prior to which she had entered into a written agreement with Fender and Carter under which she would be paid first from the proceeds of the sale in full of her claim under the Forman security deed, and under which the party to the agreement purchasing the land would execute to the other a bond conditioned to pay the obligee therein the amount of said obligee's claim in case it were legally determined that the obligee's claim was greater than that of the obligor, provided there were funds with which to do so after having paid the assignee of the Forman debt, this bond to cover the deficiency only in case there were not such funds left. Under this agreement Fender and Carter gave such a bond to Mrs.

Hodges. After paying her the full amount of her claim under the Forman security deed, Fender and Carter had on hand $5245.36. After transfer to Fender and Carter of the security deed given by Roberts to Winter, Mrs. Hodges brought suit on the note given her by Roberts et al., which note was secured by the transferred bond for title, and secured a judgment thereon which was never paid. The trial court, to whom the present case was submitted on an agreed statement of facts without a jury, held that Mrs. Hodges had a lien on the funds arising from the sale of the land, superior to the lien of Fender and Carter, and rendered judgment in her favor for the full amount she sued for and recovered against Roberts et al. Fender and Carter sued out a bill of exceptions to the Court of Appeals, which affirmed the judgment of the trial court.

The facts of this case appear in the opinion of the Court of Appeals, now under review by virtue of a writ of certiorari granted by this court to the plaintiffs in error. *Fender* v. *Hodges,* 38 *Ga. App.* 78 (142 S. E. 753). Petitioners in certiorari assign error upon the judgment of the Court of Appeals, on the grounds that the facts demanded a finding that the lien of Fender and Carter on the funds derived from the sale of the land was superior to that of Mrs. Hodges; that the Court of Appeals held that at the time of the execution of the bond for title from Lovejoy and Baskins to Roberts and its transfer to Mrs. Hodges there was no statute providing for record of bonds for title and their transfer, and in effect held that the unrecorded bond for title was binding on a third party and superior to a subsequent conveyance, none of which was in accord with decisions of the Supreme Court which the Court of Appeals relied upon; that in holding "It is also material to note that Fender and Carter acquired the notes and security deed under which they claimed after maturity of the notes," the Court of Appeals disregarded the fact agreed to that at the time of the purchase the amount paid for the notes by Fender and Carter was the correct amount owing thereon, that being past due did not destroy the validity of the security or of the notes, and that Fender and Carter purchased from a bank which in turn purchased after Roberts acquired title by deed prior to maturity of the notes; that the holding that "Carter and Fender claim as successors in title to Winter Inc., which acquired a security deed from Roberts on January 31, 1922," was erroneous, because it was admitted that said

deed was not delivered to Winter or recorded, nor the money thereon delivered to Roberts until February 14, which was after Lovejoy and Baskins, holders of the record title, had executed and delivered to Roberts the deed conveying the land to him, and hence the security deed was not acquired by Winter until February 14; and in further holding that "Ordinary diligence would have put Winter Inc. upon inquiry which would have disclosed that Mrs. Hodges was the holder of the bond for title to said property," when the law requires no such inquiry, and when the facts showed nothing to put any one upon inquiry, for though possession is notice of the rights of the possessor and those under whom he holds, it is not notice of any undisclosed lien or conveyance made by the possessor to some third person; and in further holding that "Since the claim of the plaintiff in error comes through the deed from Roberts to Winter dated January 31, 1922, and since at that time Roberts had no title to the property, or even a right to title, he having previously, on January 20, 1920, transferred to Mrs. Hodges his bond for title, Roberts had nothing to convey to Winter, and Winter, though he may have purchased in good faith, acquired nothing," because the court overlooked the admitted fact that at the time of the acceptance of said deed by Winter and its record, Roberts was in possession with a deed from Lovejoy and Baskins, and the further agreed fact that when Fender and Carter bought from the bank they found Roberts in possession with the record title in his name, there being no notice of any outstanding bond for title, the law being that one without notice purchasing from one with notice gets a good title; and that the Court of Appeals disregarded the law that the transferees of the Winter deed, if taking same in good faith and without notice of any defects in the title and without notice of any unrecorded lien or conveyance, would take same unaffected with notice chargeable to Winter.

*Little & Dickerson,* for plaintiffs in error.

*F. S. Harrell* and *E. K. Wilcox,* contra.

GILBERT, J. 1. The defendant in error filed a motion to dismiss the writ of certiorari. The motion consists of two grounds. (1) The petition does not present any question of great public concern or any matter of gravity and importance. (2) The petition violates the rule of the Supreme Court, "in that it does not plainly specify the decision complained of and the alleged errors, and does

not plainly and specifically set forth the errors alleged to have been committed by the Court of Appeals." The motion is denied. The question presented is of public concern, and is important. The petition plainly specifies as error the judgment of the Court of Appeals in holding the lien of one who holds an unrecorded bond for title by transfer thereof to be superior to the lien of one holding by transfer a note together with a deed securing the same, who took bona fide for value without notice of any kind of the existence of the bond. From a careful reading of the opinion of the Court of Appeals and the carefully prepared briefs of counsel on both sides, it is apparent that the question at issue rests in some confusion and doubt. It is of general public concern that the law should, if possible, be clarified and settled.

2. Under the agreed facts Fender and Carter, transferees of the security deeds executed by Roberts to Harry L. Winter Inc., are entitled to priority over the claim of Mrs. Hodges, transferee of the bond for title executed by Lovejoy and Baskins to Roberts. "Bonds for title to land or any interest therein shall, when executed with the formality now prescribed for the execution of deeds to land, be admissible to record in the county where the property therein described is located." Civil Code (1910), § 4213. The bond for title held by Mrs. Hodges was executed with the formality required for the execution of deeds to land. It was therefore admissible to record. With reference to the Code section quoted, this court has said: "The rule in equity is applicable in the construction of the act of 1900 (Acts 1900, p. 68; Civil Code 1910, § 4213 et seq.), providing for the registry of bonds for title. The primary intent and purpose of the act was to give notice to all persons dealing with the obligor, from the date of the filing of the bond, 'of the interest and equity of the holder of such bond in the property therein described,' so that any one acquiring a lien on or title to the property after the filing of the bond would take the property subject to the interest and equity of the obligee in the bond." *Gleaton* v. *Wright*, 149 *Ga.* 220 (100 S. E. 72). The act approved August 12, 1921 (Ga. Laws 1921, p. 157), made further provision for recording bonds for title. It supplemented the language of Code section 4213, and made plainer its meaning. Winter completed the loan to Roberts, and filed the security deed for record February 14, 1922. Mrs. Hodges had held her bond since its transfer to her in 1920,

and from the approval of the act of 1921 on August 12 to February 14, 1922, unrecorded. Therefore when Harry L. Winter Inc. took its deed, both acts were in force; the latter had been for six months, and yet the record gave no notice. Why did the General Assembly deem it necessary to protect by statute "the interest and equity of the holder of such bond" as against any one subsequently acquiring a lien on or title to the property? The conclusion seems to be that without the statute the holder of the bond for title was without protection as against persons subsequently acquiring liens where there was no actual notice, because there was no means of effecting constructive notice. For that reason the statute was enacted, and after its approval constructive notice was obtainable and from such notice the holder is protected. In our opinion the contention that Mrs. Hodges is entitled to priority is based upon a mistaken premise. It is stated in the opinion of the Court of Appeals, and repeated several times in the brief of counsel, that at the time Roberts executed and delivered his security deed to Harry L. Winter Inc., Roberts held no title to the land; that the legal title was at that time in Forman by virtue of the security deed from Lovejoy and Baskins; and that Roberts had previously transferred and assigned to Mrs. Hodges as security for a loan his bond for title from Lovejoy and Baskins. It is thus reasoned that Roberts had no title of any kind. This conclusion is reached from a consideration of *Wood* v. *Dozier, 142 Ga.* 538 (83 S. E. 133).

As we construe the facts in that case, they are entirely different from those of the present case. The contention in behalf of Mrs. Hodges is based upon the idea that Lovejoy and Baskins had assigned to Roberts their equity in the property, and upon the further view of the situation as it existed on the day named in the Roberts deed to Winter, whereas the entire transaction between Roberts and Winter should be considered in order to determine the rights of the parties. On the day named in the Roberts deed, Forman held legal title, and Mrs. Hodges held, not the Forman bond, but the Lovejoy and Baskins bond for title to Roberts, as security, and Roberts was in possession; but the transaction was not concluded on that day. It was concluded on February 14 (two weeks later than the day named in the deed) by payment of $5000 to Roberts by Winter and delivery of the security deed for record. On the previous day Roberts received from Lovejoy and Baskins a war-

ranty deed which conveyed all of the grantors' right, title, and interest in the land, subject to the Forman loan deed. Therefore, on February 13, the day before Roberts' deed to Winter was delivered for record and the money was paid, Roberts had the paper title, and he had the acknowledged and rightful possession of the land. Lovejoy and Baskins had not previously parted with their interest in the land. They had an equity subject to the Forman debt. They did not transfer this equity. Had they done so they would have been without title. *Wood* v. *Dozier,* supra. They contracted to do so in future upon conditions; they made a bond to convey title to Roberts. And that is exactly what they did; they made title to Roberts. It is true that Mrs. Hodges held the transferred bond for title of Lovejoy and Baskins as security for a loan to Roberts, but neither the bond for title nor the transfer had ever been recorded. It is important to remember at this point that the transferred bond for title did not purport to, and did not in fact, extend the lien of the Forman security deed to Mrs. Hodges' loan. It is also agreed that neither Winter nor any of the subsequent transferees of the Winter security deed had any "personal or direct knowledge of the existence of the bond for title" of Mrs. Hodges or of the transfer of the same, or of any claim of Mrs. Hodges against the land. It is further agreed that Winter, at the time of the acceptance of the Roberts security deed, had no constructive knowledge of the existence of said bond for title, and that none of the transferees of that deed at the time of the respective transfers had any actual or constructive knowledge of the existence of the bond for title, or of the transfer or assignment of the same, or of any kind of claim of Mrs. Hodges to a lien on the land.

On the other hand it is agreed that the Winter security deed and all transfers and assignments have been properly executed, witnessed and recorded, and also that Winter and all transferees and assignees, including Fender and Carter, paid for the Winter note and security deed the full face value thereof. So it follows that Winter obtained from Roberts, who held the warranty deed of Lovejoy and Baskins, the full title as security, subject only to the Forman loan. The obligation of Roberts to Mrs. Hodges by reason of the transfer and assignment of his bond for title is of course unaffected by the transactions with Winter. Roberts is in no wise relieved. Moreover, Mrs. Hodges was never in possession

of the land.  If she had been, her possession would have put them
on inquiry, and Winter would have taken a lien subject to Mrs.
Hodges' lien, notwithstanding her failure to record her papers.  The
permissive statute (Civil Code, § 4213) was enacted for the benefit
of holders of such bonds for title who were not in possession and
who needed some means of notice to the world by which their in-
terests could be protected.  Roberts was in possession; and when he
acquired his warranty deed from Lovejoy and Baskins, purchasers
from him were entitled to presume that, if he had held a bond for
title from his vendors, the same had been surrendered to the latter
in exchange for the deed.  Certainly this presumption was fully au-
thorized when Fender and Carter inquired of Roberts whether there
was any claim other than Forman's, and were informed by him
that there was none.  What other inquiry or diligence could be
expected, when the public records disclosed no counter-claim.  The
failure of Mrs. Hodges to record her bond and transfer placed it
in the power of Roberts to deceive and defraud some other person
by misrepresenting the facts, and that is what occurred.  "When
one of two innocent persons must suffer by the act of a third per-
son, he who put it in the power of the third person to inflict the
injury must bear the loss."  Civil Code (1910), § 4537.  *Mortgage
Guarantee Co.* v. *Atlanta Commercial Bank,* 166 *Ga.* 412 (143 S. E.
562).  It is argued that Fender and Carter acquired the notes and
the security deed under which they claim after maturity of the
notes, and that this fact should have placed them upon inquiry,
and that due diligence on their part would have led to a discovery
of the claim of Mrs. Hodges.  We do not think that the fact that
Fender and Carter obtained the notes after maturity can affect
the result.  The principle insisted upon is not applicable to the
facts of this case.  The purchase of notes after maturity will let
in any defense that the maker has, but the maker in this case has
offered no defense.  In fact the validity and legality of the notes
are not in any wise attacked.

Counsel for Mrs. Hodges argues that the payment of the amount
due by Roberts to Lovejoy and Baskins did not operate to put the
title in Roberts, for the reason that Roberts had transferred his
bond for title to Mrs. Hodges.  That argument is sound, but one
fact is overlooked.  That is, Roberts obtained his warranty deed
from Lovejoy and Baskins.  This fact entirely alters the conclu-

sion. That put the legal title in Roberts. Mrs. Hodges still held unrecorded her bond for title as security for the loan to Roberts; but she was sleeping on her rights. She could have preserved her lien, but failed to do so. Forman had duly recorded his lien, and his priority had been conceded. *McClure* v. *Smith,* 115 *Ga.* 709 (42 S. E. 53), is cited as authority for the ruling made by the Court of Appeals. With due respect for that court, we can not agree that it affords such authority. Our reason for differing is that the facts of the two cases are altogether different and lead to different conclusions. In the *McClure* case the security deed was the lien depended upon, and was held superior to a common-law judgment. It was there contended that while the deed was superior as a lien in regard to the original debt, such was not the case as to two loans subsequently made between the same parties. There the lien of the security deed was sought to be extended to the subsequent loan by a written agreement entered on the bond for title. The common-law judgment was obtained after the execution and record of the security deed, and after the two later loans were made with agreements extending the security to the later loans. The two extended agreements were never recorded. It should be observed that the prevailing superior lien was the security deed, not the bond for title. The security of the deed was extended by the entries on the bond for title. The lien extension of security might just as well have been written on separate pieces of paper as on the bonds for title. Placing such agreements on the bonds for title and returning them to the obligor merely placed the bonds within the control of the obligor. The grantee in the security deed obtained judgments against the grantor for each of the three loans, and each of the judgments was made a special lien on the land in virtue of the security deed. In the present case there is no contention that the assignment of the bond for title to Mrs. Hodges was intended to have or did have the effect of extending the provisions of the security deed held by Forman, for the loan made by Mrs. Hodges to Roberts. A careful reading of the *McClure* case shows that the court was dealing with an entirely different set of facts, and that the rulings there are not applicable to the present case.

The case of *Guaranty &c. Co.* v. *Athens Eng. Co.,* 152 *Ga.* 596 (110 S. E. 873), is also cited in behalf of Mrs. Hodges. It also differs in its facts from the present case. There two loans were

made between the same parties and at practically the same time. A security deed was executed by the borrower, and the bond for title was executed by the lender. The borrower immediately transferred the bond for title back to the lender as security for the second loan. The bond for title was never recorded. The borrower was in possession, and was causing a residence to be erected on the land. Liens were obtained by the contractor and materialmen. The lender who made the security deed and a transfer bond for title was held to possess prior liens on the property as to both loans, but a careful reading of the case will show that the failure to record the bond for title had little, if any, bearing on the case. The decision turned on the fact that the contractor and materialmen failed to allege and prove that the material was furnished and work begun prior to the time the security deed and transfer of the bond were made. Citing *Wood* v. *Dozier,* supra, and *Kirkman* v. *Ashford,* 145 *Ga.* 452 (89 S. E. 411), it was held that "Where an owner conveys realty as security for a debt and receives a bond for title conditioned to reconvey the property on payment of the debt under the provisions of the Civil Code, §§ 3306 et seq., and after such conveyance transfers the bond for title as security for another debt, such transfer operates to assign the equity of the owner in the land subject to the loan deed." The facts in this case differ from the facts of the other cases above dealt with, in that the present case contains the additional fact·that Roberts obtained a warranty deed from Lovejoy and Baskins, which placed in him the legal title. This fact did not exist in either of the cases above cited. It is an important difference, and it led to the conclusion in the *Athens* case, as it did in other cases, that liens do not attach because the debtor, prior to the recording of the lien, had entirely parted with his title to the land. In the present case the loan of Mrs. Hodges was not an additional loan made by a grantee in a security deed to the same grantor.

On February 14, when Roberts concluded his transaction with Winter, having on the previous day obtained a warranty deed to the land, Mrs. Hodges held the transferred bond of Lovejoy and Baskins to convey to Roberts. That gave her a claim on Lovejoy and Baskins and also on Roberts. As to Roberts, Mrs. Hodges stood at most as a purchaser with full purchase price paid and holding a bond for title—a secret equity as to Winter and assignees.

In that situation the principle ruled in *Arnold* v. *Bennett,* 90 *Ga.* 334 (17 S. E. 91), is applicable, viz.: Where a purchaser takes only a bond for title from his vendor and leaves the latter in possession, a subsequent bona fide purchaser for value from the same vendor, who takes a conveyance without any notice of the previous bond for title or of any right or equity in the first purchaser, acquires the title paramount. Harry L. Winter Inc. and subsequent assignees occupied the position of purchasers for value. *Williams* v. *Oconee County Bank,* 162 *Ga.* 615 (134 S. E. 478); *First Nat. Bank* v. *Pounds,* 163 *Ga.* 551 (136 S. E. 528), and cit. To discuss all of the cases cited on collateral points would extend the opinion beyond reasonable or helpful bounds. It is deemed sufficient to say that all cited authorities have been examined, and those not mentioned are not considered in point. Most of them state well-recognized principles of law which do not conflict with the ruling here made.

*Judgment reversed. All the Justices concur.*