35333, 35336. LINES et al. v. STATE OF GEORGIA et al. (two cases).
35334. MAUPIN v. STATE OF GEORGIA et al.
35335. J & W HOLDING COMPANY v. STATE OF GEORGIA et al.

BOWLES, Justice.

Each of the individual and corporate appellants in the above cases owns one or more lots in East End Subdivision of St. Simons Island, Georgia. The original plat of this subdivision was made in the year 1911 at which time the lots in question fronted on the Atlantic Ocean, but with a platted but unopened street entitled Beach Drive dividing the lots in the subdivision from the high water mark of the Atlantic Ocean. All parties in this case concede that the high water mark of the Atlantic Ocean had in the year 1953 moved inward on each of the lots in question. Thus Beach Drive shown on the original survey though never opened, was totally obliterated through erosion. Since 1953 the high water mark has reversed itself and moved toward the ocean leaving

certain accreted land between the lots of the owners shown on the original survey, and the present high water mark of the Atlantic Ocean. The ownership of accreted land was in question until this court's decision in a previous appeal of this case. *State v. Ashmore,* 236 Ga. 401 (224 SE2d 334) (1976). We there held that the owners of each of the lots in East End Subdivision owned the accreted lands to the high water mark, and in the same decision concluded that the State of Georgia owned the foreshore subject to limited rights of the adjacent owners. Following that decision the case was remanded to the Superior Court of Glynn County for trial on the question of whether or not the accreted lands had been dedicated to public use. The State and Glynn County contend that there was a dedication by the various property owners of the accreted land for public purposes, and that the public had accepted the same. Upon conclusion of the evidence the various property owners made motions for directed verdicts in behalf of each. These motions were overruled, and the jury returned verdicts in keeping with the contentions of the State and Glynn County that the accreted land had been dedicated to the general public. The court rendered a judgment pursuant to the verdicts declaring the land dedicated as a beach and recreational area for the following purposes: to walk, run, lie or sit upon; to use for ingress and egress to the hard sand beach; to use for picnics and other gatherings of friends and families; to station lifeguards for the protection of those using the area; to be used for the stationing of trash receptacles within the area; and for maintenance for the purposes set forth above. The property described in the judgment follows a survey made in the year 1973 and goes further to say: "The tract of land herein described lies southeasterly of Lots 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41 and 42 of East End Subdivision as shown on the plat recorded in Deed Book 4-A, pages 772 and 773, Glynn County records."

The individual property owners appeal to this court and while there have been multiple assignments of error by the several parties, we need consider only the question, "whether or not there was sufficient evidence to support the jury's verdict." The State contends that the evidence

was substantial, while on the other hand the property owners contend that the State really proved no case at all sufficient to deprive them of their lawful titles.

We have examined the evidence in meticulous detail and conclude that the State's case is deficient for a number of reasons.

(1) A party relying upon an express or implied offer of dedication of land and the acceptance of any such offer has the burden of proving it. *Dunaway v. Windsor,* 197 Ga. 705, 709-710 (30 SE2d 627) (1944); *Kesot v. City of Dalton,* 94 Ga. App. 194 (94 SE2d 90) (1956); 8 EGL 333, Dedication, § 25 (1978 rev.).

(2) "... If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict such verdict shall be directed." Code Ann. § 81A-150(a).

(3) "Private property can not be taken for public use without payment therefor; nor can this end be obtained under a claim of dedication, unless it appears that the owner has expressly given the property, or, by his long-continued acquiescence in the *exclusive* use thereof, signified an intention to devote it to public purposes." *Ga. R. & Bkg. Co. v. City of Atlanta,* 118 Ga. 486 (1) (45 SE 256) (1903). (Emphasis supplied.) This policy of long standing is included in part in our Constitution. Art. I, Sec. III, Par. I (Code Ann. § 2-301) of both the 1976 and 1945 Constitutions of Georgia. However, throughout our history, property owners have oftentimes expressly dedicated real estate for public purposes, and when accepted by the public just compensation to the owner is waived. There is no particular form of making a dedication. It may be done in writing or by parol, or it may be inferred from acts, or implied in certain cases from long use. The doctrine was recognized in the early days of this court. See *Mayor &c. of Macon v. Franklin,* 12 Ga. 239 (1852). Such a doctrine has been applied to public highways, streets, public squares, land for public buildings, public school properties and the like, and did not necessarily depend upon possession or use for any given length of time. Most cases dealing with the theory involve properties that had been improved and

maintained by public authorities. In many instances it would be destructive of public accommodation and private rights to allow revocation of a dedication. The early cases such as *Mayor &c. of Macon v. Franklin,* supra, hold that the theory of dedication of land for public use was in the nature of an estoppel in pais and the court would not permit a former proprietor to revoke the dedication.

In the case at bar the theory of dedication relied upon involves several tracts of land (all contiguous except for certain public streets) which are in fact enlargements of existing lots on which the various property owners have houses or other buildings extending from property undisputedly occupied by them in a southeasterly direction to the foreshore. Although the accretion process has made the distances from the several houses involved to the foreshore extended, the action of the State and County is in effect an attempt to have declared a portion of each owner's lot declared to be public property. The evidence shows that none of the disputed property has been improved by any public authority. The only uses of the same, other than the use of individuals in entering upon the property for sunbathing, walking, drinking beer and picnicing, are separate facts that certain lifeguard stands may or may not have been placed on certain portions,[1] removable trash receptacles may or may not have been placed on certain portions;[2] and the County has drained a part of the property at the request of owners for health reasons.

(4) The State and County admittedly introduced no evidence of any express offer of dedication, nor was there any evidence of an express acceptance by any public authority. Thus if the verdict is allowed to stand, it must be based on an implied dedication on the part of the property owners, and acceptance by the public in keeping with the requirements of previous decisions of this court

[1]We conclude, may or may not is applicable because the State and County have not offered evidence to locate precisely any trash receptacles or lifeguard stand and there were areas out of the whole that were public streets.

[2]See Footnote 1.

and certain applicable statutes.

(5) "In every case of an implied dedication it must appear that the property has been in the exclusive control of the public for a period long enough to raise the presumption of a gift." *Ga. R. & Bkg. Co. v. City of Atlanta,* supra, Headnote (4); *Healey v. City of Atlanta,* 125 Ga. 736 (3) (54 SE 749) (1906); *Tift v. Golden Hardware Co.,* 204 Ga. 654 (4) (51 SE2d 435) (1949). Although the trial court in this case refused to allow the property owners to testify regarding their intent to dedicate, and we think erroneously so,[3] the State and County totally failed to show that the public was in exclusive control of the property. The evidence conclusively shows that the owners occupied houses or other buildings on the lots owned by them, and the accreted property which is in question was nothing more nor less than extensions of those existing lots. All parties to the case agree that the area in dispute had totally eroded by the year 1953 and the foreshore had extended landward in that year so as to take in a portion of all the various lots on the original survey. Any evidence of what may have occurred prior to 1953 regarding claimed use of the disputed property would be without probative value in the case. See *Smith v. Bruce,* 241 Ga. 133 (244 SE2d 559) (1978). The evidence also shows without contradiction that the various property owners not only were occupying houses on a portion of the lots in question[4] but also used the disputed area in order to gain access to the foreshore; in the erection of trespassing signs; in the leasing of a portion of the property for storage of boats, the mowing of grass, and various other sundry uses. "The mere fact that the public uses the property of a private individual is not necessarily inconsistent with the retention of dominion by the owner." *Healey v. City of Atlanta,* supra.

---

[3]See *Ga. R. & Bkg. Co. v. City of Atlanta,* supra; *Kirkman v. Ashford,* 145 Ga. 452, 457 (89 SE 411) (1916); *Royce & Co. v. Gazan,* 76 Ga. 79 (1885).

[4]Residing on the premises is one of the most effective modes of manifest possession, and personal occupancy is not essential. *Saterfield v. Randall,* 44 Ga. 576 (1872).

Where there is an express grant, occupancy of a portion of the property may be sufficient to dedicate the whole of the grant for public purposes. But the rule is different where an implied dedication is relied upon. In such circumstances it is necessary for the contending party to show that the whole area contended for was taken in possession by the public adversely to and to the exclusion of the contended dedicating owner. This may be easily done where a street is laid out and maintained, or where a public square is improved, or where a building is erected on the property. On the other hand where there are no improvements and the uses of the property contended for by the public are not exclusive to the property owners, and in fact are consistent with uses of the property owners without more, then implied dedication is not shown.

"Another cardinal doctrine of possession is that possession is an act exclusive in its nature; there cannot be more than one possession (or community of possession) as to the same piece of property at the same time. If, between two contending for occupancy under adverse claims of title, one of them has a superior right or title, the law construes the possession to be in him who has the superior right. The true owner is never dispossessed by less than actual ouster." Powell on Actions for Land (Revised Ed.) 344, § 296.

The title or interest of the public whether based on prescription after 20 years of uninterrupted enjoyment or based on dedication and acceptance by the public for a less period of time must be both exclusive and adverse. From the very nature of beach property the approaches must be kept open for the convenience of the abutting owners and their guests. It would be inequitable to impose a public easement on a beach owner's property because he tolerated liberties from the public which did not interfere with his private enjoyment. Compare *Mayor &c. of Savannah v. Standard Fuel Supply Co.,* 140 Ga. 353 (78 SE 906) (1913). Trespassing on lands adjacent to a public beach is so frequently engaged in by persons claiming no title or interest in the land itself, it is of little evidentiary value in proving possession, and standing alone is totally insufficient in our opinion. Compare *Mills v. Kelley,* 214

Ga. 403, 417 (105 SE2d 316) (1958); *Fitzpatrick v. Massee-Felton Lumber Co.,* 188 Ga. 80 (3 SE2d 91) (1939); *Hilton v. Singletary,* 107 Ga. 821 (33 SE 715) (1899); and *Dixon v. Dixon,* 97 Ga. App. 54 (102 SE2d 74) (1958).

(6) Two essential elements for the dedication of land for public use are intention by the owner to dedicate and an acceptance by the public of the land for public use for which it is offered. Although the offer to dedicate may be implied from conduct, where the property is not improved and the public use and enjoyment of private rights would not be materially injured by interruption no dedication is shown. Compare *Tift v. Golden Hardware Co.,* 204 Ga. 654, supra; *Hyde v. Chappell,* 194 Ga. 536 (22 SE2d 313) (1942). Code Ann. § 85-410. Also *Hudspeth v. County of Early,* 210 Ga. 386 (80 SE2d 185) (1954) and many cases there cited.

With respect to improved property we might take judicial cognizance that the interruption of the use and enjoyment of the same might affect the public accommodation or private right therein or thereon but when the property claimed to be dedicated is unimproved we think it essential to show by competent evidence how such rights might be materially affected by an interruption of the enjoyment. The record is totally lacking in any such proof. See Code Ann. § 85-410.

(7) Adverse possession is usually a mixed question of law and fact — whether the facts exist which constitute adverse possession is for the jury to judge. Whether, assuming the facts proven to be true, they constitute adverse possession, is for the court to decide. *Thompson v. Fouts,* 203 Ga. 522 (2) (47 SE2d 571) (1948); *Hasty v. Wilson,* 223 Ga. 739 (158 SE2d 915) (1967). When an implied dedication is claimed, the facts relied on must be such as to clearly indicate a purpose on the part of the owner to abandon his personal dominion over the property and to devote it to a definite public use. *Dunaway v. Windsor,* 197 Ga. 705, 707, supra. "The mere use of one's property by a small portion of the public, even for an extended period of time, will not amount to a dedication of the property to a public use, unless it appear clearly that there was an intention to dedicate, and that this dedication was accepted by the public authorities." *Healey*

*v. City of Atlanta,* 125 Ga. 736, 738, supra; *Chatham Motorcycle Club v. Blount,* 214 Ga. 770, 775 (107 SE2d 806) (1959). Acquiescence cannot be effective to deprive the owner of his property when the claimed acquiescence amounts to no more than the failure to protest in isolated instances when some members of the public travel over his land. The mere use of one's property by a small portion of the public, even for an extended period of time is not sufficient to authorize an inference that the property has been dedicated to a public use, unless it clearly appears that there was an intention to dedicate, and that this dedication was accepted by public authority. *Dunaway v. Windsor,* supra.

(8) A different rule applies where the property has been improved and maintained by the authorized public authorities and used by the public for a length of time. *Lowry v. Rosenfeld,* 213 Ga. 60, 63 (96 SE2d 581) (1957). This decision, relied upon by appellees, is distinguishable for these reasons.

(9) There is no factual dispute in this case that the individuals involved owned the property in dispute and we have so previously declared in *State v. Ashmore,* 236 Ga. 401, supra. We also consider whether or not termination of use of the same by any member of the public would materially affect the public accommodation or any individual as a matter of law as mandated by Code Ann. § 85-410. As we held in *Smith v. Bruce,* 241 Ga. 133, supra, and based on the evidence in this case the streets of the subdivision that are perpendicular to the foreshore were also extended by accretion and thus they reach the foreshore furnishing access across the disputed area. The lot owners' properties extend into the accreted land by parallel lines and thus there is no encroachment by any owner of any property right on any street. The foreshore itself belongs to the State and is available to all, with access thereto not diminished. The trash receptacles are movable items and in all reason could be acceptably relocated. The same can be said for the lifeguard stations and in fact the evidence shows these were moved each day anyway. How then are the rights of the public or the rights of any individual adversely affected? To have picnics and to sunbathe would merely require use of lands owned by

the State, the public parks nearby or their own properties. We say as a matter of law that under the evidence in this case no stranger to the title will be adversely affected by our determination that the lands of the owners have not been dedicated for public purposes, nor would any public accommodation or private rights be materially affected.

We conclude that the trial judge erred in not directing a verdict as requested by each property owner.

*Judgment reversed in Cases Nos. 35333, 35334 and 35335. Cross appeal dismissed in Case No. 35336. All the Justices concur, except Hill, J., disqualified.*

ARGUED SEPTEMBER 18, 1979 —
DECIDED MARCH 6, 1980.

*Moreton Rolleston, Jr.,* for appellants (Case No. 35333).

*Arthur K. Bolton, Attorney General, Patricia T. Barmeyer, Assistant Attorney General, Dillard & Shearer, G. Douglas Dillard, Troutman, Sanders, Lockerman & Ashmore, John J. Dalton, Dickey, Whelchel, Miles & Brown, Terry L. Readdick,* for appellees (Case No. 35333).

*G. Douglas Dillard, Patrick F. Henry, Jr.,* for appellant (Case No. 35334).

*Arthur K. Bolton, Attorney General, John J. Dalton, June Ann Kirkland, Moreton Rolleston, Jr., Terry L. Readdick,* for appellees (Case No. 35334).

*John J. Dalton,* for appellant (Case No. 35335).

*Arthur K. Bolton, Attorney General, G. Douglas Dillard, Moreton Rolleston, Jr., Terry Readdick,* for appellees (Case No. 35335).

*Arthur K. Bolton, Attorney General, Don A. Langham, First Assistant Attorney General, Terry L. Readdick,* for appellants (Case No. 35336).

*John J. Dalton, G. Douglas Dillard, Moreton Rolleston, Jr.,* for appellees (Case No. 35336).